Leebov *v.* United States Fidelity and Guaranty Company, Appellant.

Argued September 27, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Arthur G. Stein*, with him *Daniel B. Winters*, and *Stein and Winters*, for appellant.

*Abraham Pervin*, with him *Sachs, Pervin, Kaufman & Menzer*, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, November 15, 1960:

In 1940, Mike Leebov, the plaintiff in this case, went into the building construction business and purchased from the United States Fidelity and Guaranty Company, the defendant, a contractor's liability policy which was renewed from year to year. The paragraph of the policy which is of principal concern in this lawsuit reads as follows: "[The defendant insurance company agrees] to pay on behalf of the Insured all

sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined."

In 1948, a landslide occurred during the course of the plaintiff's operations, and the defendant insurance company paid claims resulting therefrom.

In 1950, while the policy was in full force and effect, the premiums having been paid regularly, the plaintiff was subjected to other losses because of another landslide. This time the defendant company refused to indemnify the plaintiff, arguing that the insurance policy did not cover landslides. As the result of this second mishap the plaintiff had to pay out the amount of $1700 as the result of a lawsuit brought by a damaged property owner and the amount of $13,047.57 for expenses incurred in arresting the landslide and preventing other serious damage. He brought suit against the defendant insurance company and obtained verdicts in the sums of $1700 and $13,047.57, plus interest. The defendant appealed, seeking judgment n.o.v., and, in the alternative, a new trial.

The defendant company argues that the amounts paid out by the plaintiff were not the result of tort liability but contractual responsibility which is not embraced within the provisions of the policy.

The facts are that on November 16, 1950, while the plaintiff was engaged in excavating along a hillside preparatory to erecting a one-story warehouse on Fifth Avenue in Pittsburgh, a break occurred in the bank to the rear of the property. The land began to slide, and the porch of one of the houses atop the hill collapsed. The plaintiff immediately ceased all excavating operations, drove his trucks against the

bank, and pounded stakes into the ground to hold the trucks immobile. He summoned a shoring expert and at once notified the defendant company as to what was happening. The defendant sent to the scene its safety engineer who approved of the measures taken by the plaintiff and in no way suggested that the insurance company was disinterested on the basis the policy did not cover the situation.

As already stated, it cost the plaintiff $13,047.57 to repair the damage done and to prevent further losses. When the houseowner, whose porch was destroyed, sued the plaintiff for his damages, the insurance company refused to defend the action. The houseowner recovered $1150 from Leebov who also had to pay $550 for counsel fees, thus making up the sum of $1700, heretofore also mentioned.

The defendant contends that the plaintiff's liability was one which arose out of a contractual relationship with the shoring expert and other workmen. The fact, however, that the money was paid to persons who worked for the plaintiff did not absolve the insurance company from liability under its policy which covered losses arising " 'by reason of the liability imposed upon him [plaintiff] by law for damages because of injury to or destruction of property. . .' " The policy was not limited in its terms as the one in *Desrochers v. N. Y. Casualty Co.*, 99 N.H. 129, relied upon by the defendant. There the carrier agreed " ' to pay on behalf of the insured all sums which the insured shall become legally obligated to pay *as* damages . . . because of . . . destruction of property.' " (Emphasis supplied). The instant policy is not so limited. By its terms the defendant agreed to pay such sums as the plaintiff became obligated to pay "by reason of" the liability imposed upon him by law for damages because of injury to or destruction of property.

If the plaintiff had not taken immediate and substantial measures to remedy the perilous situation, disastrous consequences might have befallen the adjoining and nearby properties. If that had happened, the defendant would have been required to pay considerably more than is involved in the present lawsuit. It would be a strange kind of argument and an equivocal type of justice which would hold that the defendant would be compelled to pay out, let us say, the sum of $100,000 if the plaintiff had not prevented what would have been inevitable, and yet not be called upon to pay the smaller sum which the plaintiff actually expended to avoid a foreseeable disaster. That the danger to the neighborhood was one of considerable substance is evidenced by the fact that the City authorities required the nearby owners to vacate their premises for a period of two months.

It is folly to argue that if a policy owner does nothing and thereby permits the piling up of mountainous claims at the eventual expense of the insurance carrier, he will be held harmless of all liability, but if he makes a reasonable expenditure and prevents a catastrophe he must do so at his own cost and expense. Then the defendant says that there was no proof of negligence on the part of the plaintiff and that, therefore, he was not obliged under the law to take the remedial measures described. But here the defendant ignores the fact that the plaintiff was absolutely liable for damages to the nearby lands in their natural state resulting from interference with their lateral support. The plaintiff also of course would be liable for damages to buildings and persons resulting from negligence attributable to him through failure to properly meet a peril he could not mistake.

In *Diksajtsz v. Brosz,* 104 Pa. Superior Ct. 246, 250, the Superior Court said: ". . . While the expressions

in the cases on the subject of the duty of an excavating owner to protect the building of an adjoining owner by shoring, or the like, are not uniform, *we gather from the cases we have cited, and many others which we have examined, that the failure of an excavating owner temporarily to support the ground of an adjoining owner on which buildings are erected may amount to negligence. This would be so where the character of the soil is such that it is apparent that injury to the building must result unless some such precaution is taken. If defendant reasonably should have anticipated what happened to appellee's building, if he failed to shore up the land of the latter in the beginning, or if he failed to support that ground by proper shoring as the work progressed, and the injury to plaintiff's building resulted from defendant's failure to take these precautions, the injury may be said to have been caused by his negligence."* (Emphasis supplied).

We spoke in a similar fashion in the case of *Witherow v. Taunehill,* 194 Pa. 21, 23: "The plaintiff did not claim an absolute right of lateral support of his land with the buildings erected thereon. His contention was that the adjoining owner was bound to exercise ordinary care in making excavations on his land and in removing the building from the adjoining lot; and that in both of these matters he had been negligent. . . That (evidence) produced by the plaintiff tended to show that the braces intended to hold the ground near the top of the excavation were of insufficient strength, and that no attempt was made by shoring or otherwise to hold in place the earth at the side, near the bottom of the excavation, and there was affirmative testimony that the earth on both lots moved toward the excavation, carrying with it the plaintiff's house at one end, five feet from its original position."

The defendant also argues that the slide was not caused by an "accident" within the terms of the insurance policy. It maintains that the damage was the "probable cause" of the plaintiff's work and therefore does not fall within the definition of "accident." Of course, by so arguing the defendant contradicts its position that the plaintiff was not guilty of negligence. If the landslide was a probable result of the excavation, the plaintiff could not blindly proceed in complete disregard of the rights of the nearby property owners. Moreover, the defendant did not attempt to deny by its pleadings or rebut by evidence the plaintiff's allegation that this occurrence was an "accident." It is thus bound by the pleadings and the evidence, and the jury's verdict based thereon.

The defendant also relies on exclusion K of the policy, which provides that the policy does not apply to: ". . . injury to or destruction of property caused by the collapse of or structural injury to any building or structure due (a) to excavation, pile driving or caisson work, or (b) to moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof, unless specifically declared and described in this policy and premium charged therefor".

In this respect it is to be noted that the measures taken by the plaintiff were not to prevent damage to nearby buildings only but also to prevent damage to the land in its natural state and to prevent injury to the persons on the nearby property.

The defendant also errs when it argues that the measure of damages, assuming that it is liable at all, is not the amount of the plaintiff's expenditures but the difference between the market value of the damaged property calculated before and then after the landslide. In the *Diksajtsz v. Brosz,* already cited, the

Superior Court held: "Another complaint is as to the admission of testimony showing a depreciation in the value of plaintiff's property after the making of the necessary repairs, the contention being that the proper measure of damage was the cost of repair or restoration which the plaintiff and his witnesses fixed at $1,650. . . . But, as the case goes back for retrial, we deem it proper to state that we regard the case as one in which the damages were wholly remedial and, therefore, they are to be measured by the cost of making the repairs: Durante v. Alba, 266 Pa. 444, Rabe v. Shoenberger Coal Co., 213 Pa. 252."

Finally the defendant complains of the admission into evidence of the fact that in 1948 it had paid claims under an identically similar policy as the result of a similar landslide. This evidence was properly admissible. The defendant having once assumed a position inconsistent with the one now contended for, and having led the plaintiff to rely thereon to his damage, may now not protest because that inconsistency of position is disclosed to the jury. When the plaintiff went into business in 1940 he requested of the defendant company complete coverage for his contracting business. The defendant sold him a policy which was renewed from year to year. The company renewed the policy after it paid the landslide damage in 1948. It offered no denial or rebuttal to the plaintiff's testimony that the 1948 claim was paid without qualification or condition. It may not now argue, on appeal, that the 1948 payment could have been the result of extraneous factors. It had an opportunity to introduce those extraneous factors at the trial if they existed. Since the plaintiff had asked for complete coverage and since the 1948 claim was honored without qualification, the jury was warranted in concluding that the defendant intended landslide claims to be

within the terms of the policy and that the plaintiff did not, therefore, need to apply elsewhere for such coverage.

Nor did the admission of evidence on the 1948 payment offend the Parol Evidence Rule. That evidence was not introduced to contradict the terms of the policy, but to explain a latent ambiguity existing in the provision: "by reason of the liability imposed upon him by law for damages because of injury to or destruction of property . . . by accident." As stated in *Rochester & Pgh. C. & I. Co. v. Makoma Coal Co.*, 271 Pa. 394 at 398: "The writing must be permitted to operate according to the intention of the parties, and when the meaning is doubtful, the circumstances attending its execution and the subsequent acts of the parties may always be considered in determining the intent with which the words were used: . . . Such testimony does not seek to vary the terms of the writing nor to show that anything was omitted from its provisions, but merely tends to prove the meaning of the parties at the time the contract was executed. . .". For the same reason, the insurance policy provision that changes must be by endorsement attached to the policy, signed by the company's officer, has no bearing on the case. The parol evidence did not attempt to change the terms of the policy; its purpose was to show the meaning of the parties at the time the policy was executed.

Judgments affirmed.

Mr. Justice BELL would reverse and enter judgment n.o.v.