## Aronson Associates, Inc. v. Pennsylvania National Mutual Casualty Insurance Company

2

*Leslie B. Handler,* for petitioner.
*F. Lee Shipmon,* for respondent.

CALDWELL, *J.,* December 19, 1977—This matter is before us on a petition for a declaratory judgment in which we are asked to determine whether two insurance policies issued by respondent cover an expense incurred by petitioner under unique and unusual circumstances.

Petitioner is engaged in the distribution of petroleum products in the Harrisburg area and maintains several large storage tanks on its business premises. Between January 27, 1977, and February 15, 1977, a large quantity of gasoline escaped from one of the tanks through a rupture in certain underground piping. The break in the pipe was caused by extremely cold weather conditions experienced by the nation at the time. The loss of product was not discovered until the tank was nearly empty. Petitioner immediately notified the Department of Environmental Resources and an investigation was undertaken.

As a result, petitioner was informed orally and in a subsequent letter, dated March 2, 1977, as follows:

". . . [P]ollution of the ground water is a violation of Section 401 of the Clean Streams Law and thus makes you liable for penalties provided therein.

"Additionally, Chapter 101 of the Rules and Regulations of this Department requires the responsible person to take or cause to be taken all necessary steps to prevent injury to property and downstream users and to remove the gasoline from the ground and affected waters to the extent required by the Department."

Petitioner thereupon engaged a surface water geologist to plan and conduct recovery operations, and implement a procedure to prevent contamination of nearby water supplies and adjoining properties. A series of recovery and monitor wells were drilled in the area surrounding the tanks in an effort to draw the gasoline to a low point where it could be pumped from the ground.

Petitioner contacted respondent, with whom it is insured under "General—Automobile" and "Commercial Umbrella" liability policies and presented a claim for its expenses. Respondent notified petitioner it was denying coverage because the leakage was confined to the premises in the petitioner's control and that the policy did not cover the type of claim presented.

The pertinent provisions of both policies read substantially as follows:

"COVERAGE. The company will pay on behalf of the INSURED all sums which the INSURED shall become legally obligated to pay as damages because of . . . PROPERTY DAMAGE . . . to which this insurance applies, caused by an OCCURRENCE . . .

"'PROPERTY DAMAGE' means . . . physical injury to or destruction of tangible property . . .

"'OCCURRENCE' means an accident, including continuous or repeated exposure to conditions, which results in . . . PROPERTY DAMAGE . . . neither expected nor intended from the standpoint of the INSURED. . . .

"EXCLUSIONS

"This insurance does not apply: . . . to . . . PROPERTY DAMAGE arising out of the discharge, dispersal, release or escape of . . . liquids or gases, waste materials or other . . . contaminants or pol-

lutants into or upon land, . . . or any . . . body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental. . . .

"EXCLUSIONS

"This insurance does not apply: . . . to PROPERTY DAMAGE to . . . property owned or occupied by or rented by the INSURED. . . .

"ACTION AGAINST COMPANY. No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant and the company."

There is a split of authority in the cases discussing whether an insured who has procured liability insurance may recover expenses incurred in preventing or mitigating potential property damage to others. See, Annotation, 33 A.L.R. 3d 1262, §5, and cases cited therein. We are of the opinion that the disposition of the instant case should be controlled by Leebov v. United States Fidelity and Guaranty Co., 401 Pa. 477, 165 A. 2d 82 (1960). In that case plaintiff purchased a contractor's liability policy from defendant. When a landslide occurred during the course of construction operations, defendant denied coverage for plaintiff's expenditures made in arresting the landslide and preventing further damage. The court held that defendant was obligated to pay for the preventive measures taken and made the following observations:

6

"If the plaintiff had not taken immediate and substantial measures to remedy the perilous situation, disastrous consequences might have befallen the adjoining and nearby properties. If that had happened, the defendant would have been required to pay considerably more than is involved in the present lawsuit. It would be a strange kind of argument and an equivocal type of justice which would hold that the defendant would be compelled to pay out, let us say, the sum of $100,000 if the plaintiff had not prevented what would have been inevitable, and yet not be called upon to pay the smaller sum which the plaintiff actually expended to avoid a foreseeable disaster. . . .

"It is folly to argue that if a policy owner does nothing and thereby permits the piling up of mountainous claims at the eventual expense of the insurance carrier, he will be held harmless of all liability, but if he makes a reasonable expenditure and prevents a catastrophe he must do so at his own cost and expense." Leebov, supra, at 481.

We recognize that the instant policy language differs from that construed in Leebov, supra, and at first reading it might appear to distinguish the situations. In Leebov, supra, the company agreed to pay all sums the insured "[shall become] obligated to pay *'by reason of' the liability* imposed . . . by law for damages . . . [etc.]." (Emphasis supplied.) In the policy in this matter respondent agreed to pay all sums the insured "shall become legally obligated to pay *as damages* . . . (etc.)." Justice Musmanno appeared to distinguish a New Hampshire case, which went in favor of the insurer, where the policy language was similar to the within policy. However, a full reading of the decision in Leebov,

supra, reveals that what the court held was that preventive measures can be recovered where they are required to protect against a third person being harmed. The incongruous situation recognized by Justice Musmanno that would result from the insurer's interpretation, i.e., that there would be coverage if the policyholder simply allows a condition on his own property to result in damage to others, but that protection is not afforded if he elects to prevent the damage, is as illogical here as it was in Leebov. Furthermore, in criticizing an Illinois decision which denied coverage for preventive expense under policy language similar to that before us, the A.L.R. commentator noted that the Illinois court's efforts to distinguish Leebov were faulty, and that even in Leebov coverage was found to exist *before* the insured's legal obligation to pay had been established. See 33 A.L.R. 3d 1273. See also Harper v. Pelican Trucking Co., 176 So. 2d 767 (La. 1965) (automobile liability policy); Slay Warehousing Co. v. Reliance Insurance Co., 471 F. 2d 1364 (8th Cir. 1973) (inland marine policy).

Petitioner herein acted promptly in accordance with the instructions given by the Department of Environmental Resources and protected against seepage of the escaped gasoline into underground water supplies, an occurrence clearly covered by the policies. In doing so petitioner was acting to prevent the accumulation of sizable claims for damages against itself and respondent. A possibility existed that the gasoline could have infiltrated the waters or ground under a large shopping center, located across the highway, creating an explosion hazard for countless people and very valuable real estate. Had petitioner not undertaken to prevent these foreseeable consequences, its legal position would have been precarious and indefensible.

In addition, liability under the Clean Streams Law of June 22, 1957, P.L. 1987, as amended, had already attached, and petitioner may be subject to the criminal penalties set forth in section 602: 35 P.S. §691.602, as well as the civil penalties authorized under section 605: 35 P.S. §691.605, which can amount to as much as $10,000 per day. The act and regulations promulgated thereunder create a "legal obligation" to act which falls squarely within the purview of the policy sections dealing with coverage, a fact conceded by respondent in its brief.

Respondent argues that the exclusions relative to escape of pollutants apply because the loss was neither "sudden" nor "accidental." Where terms are not defined in an insurance policy they must be interpreted in their "usual, ordinary and popular sense." See M. Schnoll & Son, Inc. v. Standard Accident Insurance Company, 190 Pa. Superior Ct. 360, 362, 154 A. 2d 431 (1959). An accident has generally been defined to be an "occurrence which proceeds from an unknown cause or which is the unusual effect of a known cause and hence unexpected and unforeseen." Morelli v. The Aetna Casualty & Surety Co., 31 D. & C. 2d 424, 426 (1963). Synonymous terms include "casualty" and "misfortune." See Springfield Twp. v. Indemnity Ins. Co. of North America, 361 Pa. 461, 64 A. 2d 761 (1949).

We agree with respondent that drainage of the tanks was not detected for a short period of time and undoubtedly was not instantaneous. Nonetheless, the cracking of the underground pipe, which released the fuel, was a "sudden" event within the ordinary meaning given to that term and constituted an "accident" under the above-cited case law. Because "occurrence" is defined in the policy as an

unexpected and unintended accident, and we are of the opinion that the events herein constituted an "accident," there is no merit in the claim that there had not been an "occurrence."

It is also contended that because no other properties are known to have been affected or damaged up to the present time, there was no "Property Damage" as that term is defined in the policies. This argument fails to take into account the fact that streams and pools under petitioner's land constitute "waters of the Commonwealth" for purposes of the Clean Streams Act, and that petitioner's actions probably confined the gasoline. See, generally, Pittsburgh Coal Company v. Sanitary Water Board, 4 Pa. Commonwealth Ct. 407, 286 A. 2d 459 (1972), reversed on other grounds 452 Pa. 77, 306 A. 2d 308 (1973), appeal dismissed 415 U.S. 903 (1974). Because a basis for civil liability to the Commonwealth exists, the exclusions relating to property owned by the insured are likewise inapplicable.

Lastly, respondent attempts to invoke the provisions entitled "Action Against Company," the "basic purpose of [which] . . . is to avoid joinder of the insurance company by the insured in a damage action against the insured and to prevent suit against the insurer by the injured person or the insured until the damages have been fixed by final judgment after trial of that action . . ." 11 Couch on Insurance 2d §44.312, 724. As we are convinced of petitioner's legal obligation to prevent spreading of the gasoline through the ground or underground waterways, the "no action" provision is inapplicable. The determination to undertake recovery operations was not made ex parte and, accordingly, petitioner did not act as a mere volunteer. The

Clean Streams Law imposes responsibility for protecting other waters from pollution without regard to fault.

The basic inequity attendant in a posture which would deny coverage in this case is apparent. When a policy is written for comprehensive "umbrella" coverage, the insured should obtain that for which he may be generally said to have contracted, and the insurer will not be heard to complain that it was unaware of potential liability under the state's anti-pollution statute. See Lansco v. Department of Environmental Protection, 138 N.J. Super. 275, 350 A. 2d 520 (1975).

## CONCLUSIONS OF LAW

1. The escape of gasoline from storage tanks caused by cracking of underground pipes due to extreme cold is "sudden and accidental" and constitutes an "occurrence" as those terms are defined in the insurance policies issued to petitioner by respondent.

2. Seepage of fuel into the ground and underground waterways is "property damage" as defined in the policies.

3. No exclusion in either policy applies to the present factual situation.

4. The provisions entitled "Action Against Company" do not bar this proceeding.

5. The Clean Streams Law empowers the Department of Environmental Resources to order petitioner to recover escaped gasoline from the ground.

6. The rationale of Leebov v. United States Fidelity and Guaranty Co. is controlling in this case.

7. The expenses incurred by petitioner in attempting to recover the escaped gasoline and pre-

vent its escape to the property of third persons are recoverable by petitioner under both the "General —Automobile" and "Commercial Umbrella" policies.

## DECREE NISI

And now, December 19, 1977, petitioner's prayer for declaratory judgment in his favor is granted.

The prothonotary shall notify the parties or their attorneys of the entry of this decree nisi and if no exceptions are filed hereto in accordance with applicable rules of civil procedure the conclusions of law contained in the within opinion shall, upon praecipe, be finally adopted.