600 A.2d 836

**W.M. SCHLOSSER CO., INC.**

v.

**INSURANCE CO. OF NORTH AMERICA et al.**

Misc. No. 45, Sept. Term, 1990.

Court of Appeals of Maryland.

Jan. 27, 1992.

Herman M. Braude (Braude & Margulies, P.C., both on brief), Washington, D.C., for appellant.

Paul V. McCormick (Paul V. McCormick & Associates, both on brief), Rockville, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

McAULIFFE, Judge.

The United States Court of Appeals for the Fourth Circuit has certified to this Court, pursuant to Maryland Uniform Certification of Questions of Law Act, §§ 12–601 through 12–609 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 1989 Repl.Vol.), the following question of law:

Whether costs incurred by the certificate holder to avoid imminent catastrophic damage to the property of others are recoverable under the terms of a Comprehensive General Liability Policy where the certificate holder's actions were necessitated by the insured's negligent workmanship.

## I.

The certifying court provided us with the following facts, which include footnotes 1 through 5:

"In April, 1985, W.M. Schlosser Co., Inc. (Schlosser), entered into a contract with Fairfax County, Virginia, to

build a pumping station. The contract provided that Schlosser would indemnify, hold harmless and be strictly responsible to Fairfax County for any and all damage to existing and partially complete structures of Fairfax County arising out of Schlosser's operations and activities attributable to it or any of its subcontractors at the site.

"In May, 1985, Schlosser entered into a written subcontract with Geofreeze Corporation (Geofreeze). Under the subcontract, Geofreeze agreed to perform all necessary labor and supply all necessary materials and equipment to complete the temporary ground support, ground water control, and rough excavation phases of the project. In addition, Geofreeze agreed to indemnify and hold harmless Schlosser and Fairfax County from any and all claims, liabilities, and expenses for property damage arising out of or resulting from and in connection with the execution of its work.

"Pursuant to the requirements of the subcontract, Geofreeze purchased a Comprehensive General Liability Policy from Insurance Company of North America (INA).[1] A Certificate of Insurance was delivered to Schlosser which named it as the Certificate Holder and certified that a $1 million Comprehensive General Liability Policy had been issued on the project.[2]

---

**1.** Neither the actual policy nor a copy of the actual policy could be found by the parties. However, a Comprehensive General Liability Policy is the same in form and substance as a Service Industries Package Policy, except that the Package Policy does not contain the declarations and endorsements actually issued to the insured.

**2.** The following policy provisions are contained in the Service Industries Package Policy:
**LIABILITY CLAIMS WE WILL COVER**
If you or another *insured* has a legal responsibility to pay a claim someone made based on *bodily injury, personal injury,* or *property damage,* resulting from an *occurrence,* we will pay that claim if it is covered under this policy. (Emphasis in original.)
**PROPERTY DAMAGE**
*Property damage* means injury to, or destruction of, someone else's tangible property that occurs during the policy period. *Property*

"In July, 1985, Geofreeze began freezing the earth around the intended area of excavation. On September 5, 1985, Geofreeze commenced excavation activity on the interior of the frozen earth cofferdam. By September 9, 1985, large quantities of earth were falling off of the wall of the excavation. On September 12, 1985, the cofferdam was deteriorating to such an extent that excavation work was temporarily stopped because of unsafe job site conditions.

"On September 16, 1985, significant deterioration on the face of the earthen wall posed a threat of lateral collapse to the earth surrounding the frozen wall, as well as to adjacent structures owned by Fairfax County. On September 18, 1985, Geofreeze halted its excavation operation completely until the structural problems with the earthen cofferdam could be repaired.

"On September 26, 1985, with the excavation approximately two-thirds complete, total collapse of the earthen cofferdam and surrounding wall appeared imminent with Hurricane Gloria forecast to pass over the site within 48 hours.[3] Upon the recommendation of Geofreeze, an 'emergency backfilling' operation was undertaken to fill in the excavation and avoid a total collapse. Schlosser notified INA of the emergency backfilling on the same day.

---

*damage* also includes the property owner's loss of use of property that hasn't been damaged, but only if that loss of use results from:

\* damage to property that isn't your *product* or work; or

\* sudden and accidental injury to, or destruction of, your *product* or work. (Emphasis in original.)

YOUR WORK OR PRODUCT

We won't protect against claims for *property damage* to your *products* where the damage arises out of the *products* themselves or any part of them. And we won't protect against claims for *property damage* to *completed work* you performed where the damage arises out of the work itself. (Emphasis in original.)

**Occurrence**

means an *accident,* including continuous or repeated exposure to the same event, that results, during the policy period, in loss or damage to your property, or in *bodily injury, personal injury,* or *property damage.* Such injury or damage must be neither expected nor intended by the *insured.* (Emphasis in original.)

3. Hurricane Gloria ultimately veered away and missed the work area.

"Subsequently, Schlosser filed a claim with INA under Geofreeze's policy seeking coverage for property damage incurred as a result of the frozen cofferdam's failure and reimbursement of costs associated with the emergency backfilling and reexcavation. INA denied coverage on the claim, stating that emergency backfilling and reexcavation did not constitute an 'occurrence' under the policy.

"On December 21, 1988, Schlosser sued Geofreeze [4] and its insurance company, INA, in federal court. The laws of Maryland govern the legal issues raised in this appeal.[5] Schlosser and INA each filed Motions for Partial Summary Judgment and Summary Judgment, respectively. The district court granted INA's motion for Summary Judgment on the basis that Schlosser's losses were caused by negligent workmanship and were not caused by an 'occurrence' within the coverage of the policy. Schlosser appealed to the United States Court of Appeals for the Fourth Circuit and shall be treated as the appellant in this certification procedure."

## II.

 In *Cheney v. Bell National Life*, 315 Md. 761, 766–67, 556 A.2d 1135 (1989), we set forth certain principles governing the interpretation of insurance contracts:

Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer. Rather, following the rule applicable to the construction of contracts generally, we hold that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole. In the event of an ambiguity, however, extrinsic and parol evidence may be considered. If no extrinsic or parol evidence is introduced, or if the ambiguity remains after

---

4. In October, 1989, Geofreeze was dismissed from the action because it was in bankruptcy at the time the action was filed.

5. Schlosser, a Maryland resident, is the designated Certificate Holder of the insurance policy issued by INA.

consideration of extrinsic or parol evidence that is introduced, it will be construed against the insurer as the drafter of the instrument.

■ Applying these rules of construction to the provisions of the policy in question, we determine that the insurance contract does not provide for recovery of preventive costs, and therefore Schlosser is not entitled to relief on the basis of the contract between Geofreeze and INA.

The contract provides coverage only when "[the insured] has a legal responsibility to pay a claim someone made based on bodily injury, personal injury, or property damage, resulting from an occurrence." (Emphasis omitted.) Addressing the question whether any third party has sustained bodily injury, personal injury, or property damage, resulting from an occurrence, or has made a claim therefor, Schlosser offers two arguments. First, it contends this is a non-issue, asserting that the certifying court has already concluded that there was an occurrence within the meaning of the policy, there was damage to the property of others, and a claim was filed. Schlosser argues that the certifying court assumed or found that these conditions had been met, and seeks our explication of Maryland law only as to the impact of Geofreeze's negligent workmanship under those circumstances. We do not understand that to be the case.

Alternatively, Schlosser contends that the partial failure of the earthen wall constituted an occurrence within the meaning of the policy, and that the buildings of others had suffered property damage by reason of a diminution of, or imminent threat of loss of, lateral support. Again, we do not agree.

The insurance contract involved in this case is a Contractor's General Liability Policy. By its clear and unambiguous language, it is intended to protect the insured against claims made by others for damages the insured has a legal responsibility to pay. It is not an all risks or builder's risk policy. No claims were made by others as a result of any personal injury or property damage. Moreover, there was

no occurrence within the meaning of the policy that caused damage to the persons or property of others. The action taken by Schlosser was intended to prevent the type of harm the policy would have covered, and no such harm in fact resulted.

Schlosser argues that even if preventive costs are not within the literal language of the insurance contract, principles of equity, fairness, and public policy dictate that the contract be "interpreted" to afford such coverage. In support of that proposition, Schlosser cites *Leebov v. United States Fidelity and Guaranty Co.*, 401 Pa. 477, 165 A.2d 82 (1960). In *Leebov*, a contractor was engaged in excavating a hillside when a bank broke away and adjacent land began to slide, causing the porch of a nearby house to collapse. The contractor immediately ceased all excavation operations, drove his trucks against the bank, and enlisted the aid of a shoring expert. The contractor ultimately sued the insurer who had issued a contractor's liability policy to him, claiming reimbursement for, *inter alia*, the costs of shoring to prevent further damage. The liability policy issued to Leebov provided, in pertinent part:

> [The defendant insurance company agrees] to pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined.

*Id.*, 165 A.2d at 83.

The Supreme Court of Pennsylvania affirmed a judgment in favor of the contractor for all damages and costs. The Court first distinguished the language of Leebov's policy from the policy involved in the earlier New Hampshire case of *Desrochers v. New York Casualty Co.*, 99 N.H. 129, 106 A.2d 196, 198 (1954), in which liability had been denied, by pointing out that the language of the policy before it was broader in scope than the language of the policy in *Desrochers*. The *Leebov* Court then went on to say:

It would be a strange kind of argument and an equivocal type of justice which would hold that the defendant would be compelled to pay out, let us say, the sum of $100,000 if the plaintiff had not prevented what would have been inevitable, and yet not be called upon to pay the smaller sum which the plaintiff actually expended to avoid a foreseeable disaster....

It is folly to argue that if a policy owner does nothing and thereby permits the piling up of mountainous claims at the eventual expense of the insurance carrier, he will be held harmless of all liability, but if he makes a reasonable expenditure and prevents a catastrophe he must do so at his own cost and expense.

165 A.2d at 84.

We are not persuaded by *Leebov*, or by any subsequent case that has followed the *Leebov* rationale,[6] that concepts of fairness and equity justify the construction of an insurance policy to provide coverage where none exists under the clear language of the policy. As the Appellate Court of Illinois pointed out, in denying recovery to a contractor suing on a liability policy under circumstances similar to those involved here and in *Leebov:*

This is not to say that the court ignores the exigent circumstances involved or the obvious good faith efforts of the plaintiff. We, however, are no[t] empowered, in the guise of good faith and peculiar circumstances, to alter the terms of an otherwise unambiguous contract. The intention of the parties is the gravamen under ordinary contract principles.

*J.L. Simmons Co. v. Lumbermens Mutual Insurance Co.,* 84 Ill.App.2d 98, 228 N.E.2d 227, 231 (1967). Similarly, this Court said in *National Grange Mut. Ins. v. Pinkney,* 284 Md. 694, 706, 399 A.2d 877 (1979), that "we may not make a new contract under guise of construction."

---

**6.** *See, e.g., Slay Warehousing Co., Inc. v. Reliance Ins. Co.,* 471 F.2d 1364 (8th Cir.1973).

Matters of fairness and equity and public policy are better addressed in an action for restitution grounded upon a claim of unjust enrichment than by rewriting the contract of the parties. *Cf. Maryland Cas. Co. v. Armco, Inc.*, 822 F.2d 1348, 1353 (4th Cir.1987). Indeed, one commentator has suggested that *Leebov* may actually have been decided on a quasi-contractual theory. Note, *Allocation of the Costs of Preventing an Insured Loss*, 71 Colum.L.Rev. 1309, 1316 (1971).

We conclude that under Maryland law, the liability policy at issue here did not provide coverage for the preventive costs incurred by Schlosser.

### III.

The parties have briefed and argued an additional question: Whether Schlosser may be entitled to recover on a theory of quasi-contract, even if its claim is not cognizable under the terms of the insurance contract. Schlosser argues that it acted prudently, in an emergency situation allowing no time for negotiation or agreement with INA, to prevent potentially catastrophic damages for which INA would have been liable to its policy limits of $1,000,000. Under these circumstances, Schlosser argues, INA would be unjustly enriched (or Schlosser would suffer an unjust detriment) if Schlosser cannot obtain restitution for all or a fair measure of the money it expended to prevent collapse of the perimeter walls. *See generally,* Levmore, *Explaining Restitution*, 71 Va.L.Rev. 65 (1985); Note, *Allocation of the Costs of Preventing an Insured Loss*, 71 Colum.L.Rev. 1309 (1971); Annot., *Recoverability, Under Property Insurance or Insurance Against Liability for Property Damage, of Insured's Expenses to Prevent or Mitigate Damages*, 33 A.L.R.3d 1262 (1970); *Restatement of Restitution*, § 112 (1937); *Restatement (Second) of Restitution*, §§ 1–3 (Tent. Draft No. 1, 1983).

INA responds that it would hardly be unconscionable to require Schlosser to pay for preventive measures that it

was legally and morally obligated to take; that Schlosser cannot occupy a better position than Geofreeze, the named insured, and that action to correct a situation caused by the negligence of Geofreeze is no more than was required by the original contract obligation of Geofreeze and Schlosser to maintain the perimeter walls of the excavation site; and, that the creation by the court of liability for which the parties could have but did not bargain would be inappropriate and itself unjust.

The question is interesting, and determination of whether to grant restitution for preventative measures requires careful consideration of a number of factors. See the comprehensive discussion of a number of relevant factors by Judge Barry in *McNeilab, Inc. v. North River Ins. Co.,* 645 F.Supp. 525 (D.N.J.1986), *aff'd* 831 F.2d 287 (3d Cir. 1987), involving an unsuccessful attempt by the manufacturer of "Tylenol" to recover from its liability insurance carrier $100,000,000 expended for the recall of the product following the death of seven persons who had ingested Tylenol capsules laced with cyanide.

We do not address this question, except to acknowledge its existence in an appropriate case, because it is not a part of the question certified to us. The question certified is:

> Whether costs incurred by the certificate holder to avoid imminent catastrophic damage to the property of others are recoverable *under the terms of a Comprehensive General Liability Policy* where the certificate holder's actions were necessitated by the insured's negligent workmanship? (Emphasis added.)

As we have frequently stated, "the Uniform Certification of Questions of Law Act ... does not authorize us to go beyond the questions certified in the order of the certifying court." *Krashes v. White,* 275 Md. 549, 557, 341 A.2d 798 (1975). *See also Toll v. Moreno,* 284 Md. 425, 437, 397 A.2d 1009 (1979). The certifying court did not authorize expansive treatment of the question in this case. *See Volkswagen of America, Inc. v. Young,* 272 Md. 201, 205, 321 A.2d 737 (1974) (certifying court "specified that the phras-

ing of the certified question was not intended to restrict our consideration of the problems involved and the issues as we perceive them in light of the complaint in the case"). Moreover, it appears from the complaint that the action against INA focused on the theory of entitlement under the insurance contract, rather than upon a theory of restitution based upon unjust enrichment. The issue of possible recovery under a theory of quasi-contact is not before us.

## IV.

We answer the certified question in the negative. The costs incurred by Schlosser to avoid imminent catastrophic damage to the property of others are not recoverable under the terms of the Comprehensive General Liability Policy issued by INA.

CERTIFIED QUESTION ANSWERED AS SET FORTH ABOVE. COSTS IN THIS COURT TO BE EQUALLY DIVIDED BETWEEN THE PARTIES.