675 A.2d 1256

**REDEVELOPMENT AUTHORITY OF the CITY OF PHILADELPHIA, Appellant**

v.

**INSURANCE COMPANY OF NORTH AMERICA and Cigna Property and Casualty Companies, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 11, 1996.

Filed March 26, 1996.

Reargument Denied June 4, 1996.

Robert J. Sugarman, Philadelphia, for appellant.

E. Douglas Sederholm, Philadelphia, for appellees.

Before KELLY and POPOVICH, JJ., and MONTEMURO, Retired Justice, Assigned.*

MONTEMURO, Retired Justice, Assigned.

Appellant Redevelopment Authority of the City of Philadelphia (RDA) initiated this declaratory judgment action in the Court of Common Pleas of Philadelphia County, seeking a determination of whether Appellee Insurance Company of North America (INA) has a duty to defend RDA in an action

* Retired Justice assigned to Superior Court.

instituted by the University City Science Center (Science Center). The trial court denied RDA's Motion for Summary Judgment and granted INA's Cross–Motion for Summary Judgment. RDA appealed.

■ An insurer's duty to defend is distinct from its duty to provide coverage. *Erie Ins. Exch. v. Transamerica Ins. Co.,* 516 Pa. 574, 583, 533 A.2d 1363, 1368 (1987). In a typical liability policy, the insurer agrees to defend the insured against any suits arising under the policy, even if a suit is groundless, false or fraudulent. *Id.* Accordingly, if a complaint filed against an insured may potentially come within the coverage of the policy, the insurer has the duty to defend, until the claim is confined to a recovery that is not covered under the policy.[1] *Id.*

In its complaint, Science Center alleged that in 1967, RDA acquired the property in issue through condemnation and that in 1967, RDA entered into a redevelopment agreement with Science Center.[2] It also alleged that RDA leased the property to Amoco Oil Company (Amoco) for the operation of a service station from 1967 until sometime prior to June, 1977, at which time Amoco relinquished possession and control of the property to RDA. Science Center further alleged that in June, 1977, RDA and/or its agent performed a partial demolition of the service station, during which petroleum products and wastes were released into the property. Finally, Science Center

1. In this case, the insurance policy provided, in relevant part:

   The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages ... to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent ... but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

2. This agreement was amended and extended between August 17, 1970, and December 23, 1985; but it was not materially altered so as to affect this litigation.

alleged that after obtaining legal title in 1985, it had to remove and remediate the contamination, so that it could redevelop the property, fulfill its obligations under state and local law, and prevent future harm to the public health and safety.

On appeal, RDA seeks a review of the trial court's determination that INA does not have a duty to defend RDA in the Science Center litigation, based on its interpretation that the policy does not contain separate and distinct demolition liability insurance and that the claims in the Science Center complaint fell within the "owned property exclusion" to the policy.

The principles governing the interpretation of insurance contracts are well settled. The court is to ascertain the intent of the parties from the language of the document. *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983). Where a provision of a policy is ambiguous, it should be construed against the insurer, as the drafter of the document. *Id.* However, if the language is clear and unambiguous, the court must give effect to its plain and ordinary meaning. *Id.*

At issue in this action is the interpretation of several provisions in the insurance policy issued by INA to RDA for the term of January 1, 1977 to January 1, 1978. The Declarations page of this policy identified RDA as the named insured. It also stated that coverages were limited to those that were indicated and were subject to all of the terms of the policy. The Coverage Parts section indicated that INA would provide "Owners', Landlords' and Tenants' Liability Insurance" (OLT-LI). This included a subheading for "Structural Alterations, New Construction, Demolition" coverage, which was indented immediately below the provision for OLTLI.

On the next page, the policy contained OLTLI Additional Declarations. It consisted of a schedule entitled "COVERAGE FOR DESIGNATED PREMISES AND RELATED OPERATIONS IN PROGRESS INCLUDING STRUCTURAL ALTERATIONS, NEW CONSTRUCTION AND DEMOLITION." Within the section relating to structural alterations, new construction and demolition, the policy indicated

coverage for the specific hazards of "Wrecking" and "Construction Operation Owner."

The policy also enumerated several exclusions to coverage. The relevant exclusions are the "pollution exclusion," the "owned property exclusion," and the "alienated property exclusion." The policy specifically provided the following:

This insurance does not apply:

. . . .

(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

. . . .

(k) to property damage to

(1) property owned or occupied by or rented to the Insured,

(2) property used by the Insured, or

(3) property in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control.

(l) to property damage to premises alienated by the Named Insured arising out of such premises or any part thereof.

Thus, it would appear from the language of the document, coupled with the format of the policy, that "Wrecking" and "Construction Operation Owner" coverage is encompassed within "Structural Alteration, New Construction, Demolition" coverage, which in turn is a part of the overall OLTLI. Accordingly, the trial court did not err in its determination of this issue. Therefore, we must now consider whether any of the relevant exclusions set forth in the policy apply, thereby precluding coverage.

As the trial court concluded that the claims asserted by Science Center fell within the "owned property exclusion," thereby precluding recovery by RDA, we will review this provision first.

RDA contends that Pennsylvania law precludes denial of coverage under an owned property exclusion if there is a threat of damage to third parties, if the clean-up is legally required, or if the pollution is a threat to public health and safety. Furthermore, RDA contends that it was not the owner, nor was it in control of the property at the time the demolition occurred; therefore, the owned property exclusion is not applicable.

In *Leebov v. United States Fidelity and Guar. Co.*, 401 Pa. 477, 165 A.2d 82 (1960), an insured purchased a contractor's liability policy. *Id.* at 478, 165 A.2d at 83. When a landslide occurred during the course of excavation work, the insured took measures to arrest the landslide and prevent further damage. *Id.* at 479–80, 165 A.2d at 83. The Court held that the insurer was obligated to pay for the preventative measures taken by the insured. *Id.* at 481, 165 A.2d at 84.

In *Aronson Assoc., Inc. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 14 Pa.D. & C.3d 1 (Dauphin Co. 1977), *aff'd per curiam*, 272 Pa.Super. 606, 422 A.2d 689 (1979), the insured was covered under "General–Automobile" and "Commercial Umbrella" liability policies. *Id.* at 4. Both of the policies contained pollution and owned property exclusions. *Id.* at 4–5. The insured filed a claim seeking reimbursement for expenses incurred, when it undertook measures to prevent contamination of water supplies of neighboring properties. *Id.* at 4. The insurer denied coverage, stating that the leakage was confined to premises in the insured's control. *Id.* The court found that the owned property exclusion did not apply, as the streams and pools under the insured's land constituted waters of the Commonwealth. *Id.* at 9. Furthermore, the court noted that the insured did not act as a mere volunteer when it undertook preventive measures, rather the insured acted pursuant to the advisement of the Department of Environmental

Resources and its obligations under the Clean Streams Law. *Id.*

In *Lehigh Elec. & Eng'g Co. v. Selected Risks Ins. Co.*, 30 Pa.D. & C.3d 120 (Luzerne Co. 1982), the insured was covered by a general liability insurance policy, *Id.* at 120, containing both pollution and owned property exclusions. *Id.* at 122–23. The insured filed a claim under the policy, seeking to recover amounts expended to prevent damage to adjoining properties due to a PCB spill. *Id.* at 127. The court found that the owned property exclusion only applied to a situation where the damage was limited to the premises owned or leased by the insured, and that it did not exclude coverage where preventative measures were taken due to a concern for the imminent risk of substantial harm to the property of others. *Id.* at 128. Ultimately, the court concluded that the determination of whether there was an imminent risk of substantial harm required the presentation of factual evidence, which it did not have before it. *Id.* at 127, 129. Accordingly, the court denied the insurer's preliminary objections. *Id.* at 130.

■ In this case, it is clear that Science Center's claim that RDA is primarily liable under state and local law for the clean up of the property falls squarely within the purview of the policy section dealing with coverage. However, the legal obligation to clean up the property does not, in and of itself, overcome the exclusions for owned property. There must also be an imminent threat of substantial harm to the property of others. However, as in *Lehigh,* the facts alleged in the Science Center complaint are insufficient to make this determination. As such, INA's motion for summary judgment should not have been granted on this basis.

■ Although not explicitly dealt with by the trial court, our analysis must continue with a review of the other exclusions raised by INA as a defense to the instant action. If coverage is precluded by one of these exclusions, the grant of INA's motion for summary judgment may still be upheld. Accordingly, we turn to the pollution exclusion.

In *Techalloy Co. v. Reliance Ins. Co.*, 338 Pa.Super. 1, 487 A.2d 820 (1984), the Court held that the insurer did not have a duty to defend, where the allegations in the complaint and the facts in the record established that there was regular or sporadic discharge over a period of twenty-five years, thereby negating any potential for finding a sudden event. *Id.* at 15, 487 A.2d at 827–28.

In *Centennial Ins. Co. v. Lumbermens Mut. Cas. Co.*, 677 F.Supp. 342 (E.D.Pa.1987), the Court found that the insured's waste was released on the site on numerous occasions over a thirteen month period. *Id.* at 348. Accordingly, it held that the continuous nature of the waste disposal precluded coverage, because the discharge was not sudden. *Id.* at 349.

In this case, Science Center alleged in its complaint that the partial demolition instigated the discharge of the pollution, but that it continued over a period of nearly eleven years. Clearly, this situation is analogous to those in *Techalloy* and *Centennial* and falls squarely within the policy exclusion for gradual pollution damage. Therefore, we conclude that INA does not have a duty to defend RDA in the Science Center litigation.[3]

Accordingly, based on the reasoning set forth above, the order of the Court of Common Pleas of Philadelphia County is hereby affirmed.

---

**3.** As we have found that coverage would have been precluded under the pollution exclusion, it is unnecessary to discuss the applicability of the alienated property exclusion.