## Boyertown Mutual Insurance Co. v. Skias

C.P. of Berks County, no. 1270-95 A.D. 00-8628.

*Fredrick T. Lachat Jr.,* for plaintiff.

*Peter N. Munsing* and *Allan C. Molotsky,* for defendants Caceres.

ESHELMAN, *J.,* April 2, 2001—In this action filed under the Declaratory Judgments Act, 42 Pa.C.S. §7531 et seq., we have been asked to decide whether Chris and Shirley Skias individually and/or trading as Chris Skias and/or Chris Skias Weld-Rite Shop and Crane Rentals are insureds under a contract of liability insurance issued by Boyertown Mutual Insurance Company. We have decided that the Skiases and the Chris Skias businesses are insureds under the policy and Boyertown is contractually obligated to provide them with a defense and indemnification in the underlying liability action.

Boyertown issued a special multi-peril policy to Chris Skias and Shirley Skias t/a Weld-Rite Shop for the period effective November 4, 1989 to November 4, 1990. (Stipulation of facts, ¶2.) A review of the complaint in the underlying action reveals the following: Industrial Abrasives a/t/a English Abrasives rented a building from John and Paula Jones located at 642 N. 8th Street, Reading, Pennsylvania. (Complaint, ¶7.) Sometime during the policy period but not otherwise specified in the complaint, Industrial and/or the Joneses made mention to Mr. Skias that they wished to have certain windows at

the building boarded up and needed a device that would allow Industrial's workers to reach the third floor (Complaint, ¶9.) Chris Skias represented that he had such a device, and rented a mobile crane or "cherry picker" to either Industrial or the Joneses, informing them that it was safe for the purpose of elevating persons at least three stories high. (Complaint, ¶10.) On September 21, 1990, Industrial employee Franklin Caceres was positioned in the bucket of the "cherry picker" and elevated to the third story of the building to begin boarding up windows (Complaint, ¶¶5, 11.) While a representative of either Industrial or the Joneses was manipulating the controls of the bucket, the boom of the "cherry picker" suddenly collapsed throwing Mr. Caceres to the street thereby causing him personal injuries. (Complaint, ¶13.) At all relevant times the Skiases owned the "cherry picker" either individually, and/or as Chris Skias Crane Rentals and/or Chris Skias Weld-Rite Shop. (Complaint, ¶14.)

Mr. Caceres and his wife filed the complaint in the underlying action on September 2, 1992. They named as defendants, inter alia, Chris Skias and Shirley Skias and the Chris Skias businesses. Mr. and Mrs. Caceres alleged that the Skiases and/or the Chris Skias businesses were negligent in maintaining and renting the "cherry picker" and knew or should have known the machine was not suitable for safely elevating persons to the third story. (Complaint, counts V-XIII.) By way of letter dated September 17, 1992, Boyertown assumed defense of the case. (Brief in support of the motion for summary judgment of defendants Franklin Caceres and Angelita Caceres, exhibit "A.")

On February 25, 1995, Boyertown filed the within action seeking a declaratory judgment that it is not ob-

ligated to provide insurance coverage or legal representation to the Skiases and the Chris Skias businesses in the underlying action. Except for the Skiases and the Chris Skias businesses, all defendants filed answers to the complaint.[1] By way of amended order dated August 31, 2000, summary judgment was entered in favor of Industrial and against all other parties in the within cause of action. The case was called for trial, but by way of order entered December 1, 2000, the court approved a stipulation entered into between Boyertown and Mr. and Mrs. Caceres removing the case from the trial list to allow the parties to file cross-motions for summary judgment. On December 4, 2000, the parties filed a stipulation of facts taking as true the factual allegations in the underlying complaint and agreeing that Boyertown issued the policy to the Skiases t/a Weld-Rite Shop for the period November 4, 1989 to November 4, 1990 and attaching a true and correct copy of the policy. The parties filed their cross-motions on December 12, 2000 and their respective answers to the motions on December 22, 2000. By way of order dated January 22, 2001, the court denied Boyertown's motion, granted the

---

1. Pursuant to Pa.R.C.P. 1601(a) the practice and procedure in a declaratory judgment action shall follow, as nearly as may be, the rules governing the action in equity. Pa.R.C.P. 1511(a) provides that, on praecipe of the plaintiff, the prothonary shall enter a judgment of default against a defendant for failure to plead within the required time to a complaint which contains a notice to defend. Pa.R.C.P. 1511(b) provides in pertinent part, that in all cases, the court shall enter an appropriate decree upon the judgment of default and may take testimony to assist in the framing of the decree. In this case, the plaintiff did not praecipe for a default judgment against the Skiases or the Chris Skias businesses. Therefore, the failure of said defendants to answer the complaint played no role in the framing of the order disposing of the cross-motions for summary judgment.

Cacereses motion and ordered Boyertown to provide a defense and indemnification to the Skiases and the Chris Skias businesses in the underlying action. Boyertown filed an appeal from this order on February 20, 2001. This opinion is filed pursuant to Pa.R.A.P. 1925(a).

Summary judgment is proper where the pleadings, depositions, affidavits and materials of record show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The court views the record in the light most favorable to the opposing party and resolves all doubts and reasonable inferences about the existence of an issue of fact in favor of the non-moving party. *Nationwide Insurance Co. v. Horace Mann Insurance Co.,* 759 A.2d 9, 10 (Pa. Super. 2000). (citations omitted) The court must ignore controverted facts contained in the pleadings and restrict its review to material filed in support of, and in opposition to, a motion for summary judgment and to those allegations in pleadings that are uncontroverted. *Overly v. Kass,* 382 Pa. Super. 108, 554 A.2d 970 (1989). Summary judgment should not be entered unless the case is clear and free from doubt. *Hathi v. Krewstown Park Apartments,* 385 Pa. Super. 613, 561 A.2d 1261 (1989). "Generally, the proper construction of a policy of insurance is a matter of law which may properly be resolved by a court pursuant to a motion for summary judgment." *Frain v. Keystone Insurance Company,* 433 Pa. Super. 462, 466, 640 A.2d 1352, 1354 (1994).

"Section 7533 of the Judicial Code provides:
" '*Section 7533. Construction of documents'*
" 'Any person interested under a deed, will, written contract, or other writings constituting a contract, or

whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder.' 42 Pa.C.S. §7533. " 'An action for declaratory judgment is available to obtain a declaration of the existing legal rights, duties, or status of the parties where the declaration will aid in the determination of a genuine, justifiable controversy. *Fidelity Bank v. Pennsylvania Turnpike Commission,* 498 Pa. 80, 88-90, 444 A.2d 1154, 1159 (1982); *Nationwide Mutual Insurance Co. v. Cummings,* 438 Pa. Super. 586, 590-91 n.5, 652 A.2d 1338, 1340 n.5 (1994), *alloc. denied,* 540 Pa. 650, 659 A.2d 988 (1995). A declaratory judgment action is particularly appropriate in construing contracts of insurance in order to determine whether an insurer is obligated to defend and/or indemnify one claiming under the policy. *Liberty Mutual Insurance Co. v. S.G.S. Co.,* 456 Pa. 94, 95-99, 318 A.2d 906, 907-908 (1974); 42 Pa.C.S. §7533 (construction of documents). See also, *Redevelopment Authority of the City of Philadelphia v. Insurance Company of North America,* 450 Pa. Super. 256, 675 A.2d 1256 (1996). The proper construction of an insurance policy is an issue, which may be resolved as a matter of law in a declaratory judgment action. *Alexander v. CNA Insurance Co.,* 441 Pa. Super. 507, 509-11, 657 A.2d 1282, 1284 (1995).' *Redevelopment Authority v. International Insurance Co.,* [454 Pa. Super. 374] at 383, 685 A.2d [581] at 585-86 [1996]. . . .

"'The principles governing the interpretation of insurance contracts are well-settled. Review is directed

at ascertaining the intent of the parties as manifested by the written instrument. Where the provision of a policy is ambiguous, the policy provision is construed in favor of the insured and against the insurer, the drafter of the instrument. Where the language of an insurance contract is clear and unambiguous, a court is required to give effect to that language. *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 305, 469 A.2d 563, 566 (1983). A court may not "rewrite" an insurance contract, or construe clear and unambiguous language to mean other than what it says. *Guardian Life Insurance Co. v. Zerance,* 505 Pa. 345, 353, 479 A.2d 949, 953 (1984); *Patterson v. Reliance Insurance Cos.,* 332 Pa. Super. 592, 595, 481 A.2d 947, 949 (1984).' *Jeffrey v. Erie Insurance Exchange,* 423 Pa. Super. 483, 489, 621 A.2d 635, 638 (1993) (en banc). 'Where the policy language is clear, the contract will be applied as written.' *Bowers v. Estate of Feathers,* 448 Pa. Super. 263, 268, 671 A.2d 696, 697 (1995), quoting *Insurance Company of the State of Pennsylvania v. Hampton,* 441 Pa. Super. 382, 385, 657 A.2d 976, 977-78 (1995), *alloc. denied,* 542 Pa. 647, 666 A.2d 1056 (1995). Accord: *Alexander v. CNA Insurance Co.,* 441 Pa. Super. 507, 509-11, 657 A.2d 1282, 1284 (1995), *alloc. denied,* 543 Pa. 689, 670 A.2d 139 (1995)." *Warner v. Continental/CNA Insurance Cos.,* 455 Pa. Super. 295, 300-304, 688 A.2d 177, 180-82 (1996).

Boyertown points out that the declarations page of the policy denotes "Chris Skias and Shirley Skias t/a Weld-Rite Shop" as the named insureds and no policy was issued to Chris Skias Crane Rentals. Because the underlying action arises from the risks and hazards as-

sociated with the crane rental operations of Chris Skias and not the welding operations, Boyertown contends that it has no obligation under the policy to defend or indemnify the Skiases in the underlying action. "Boyertown Mutual is not denying coverage because the accident in question occurred off premises. The coverage is being denied because the occurrence was totally unrelated to the welding operations insured." (Memorandum of law in support of plaintiff Boyertown Mutual Insurance Company's motion for summary judgment, p. 10.) We think this argument begs the question. The central issue in this case is a definitional one: How does the policy define "named insured" and do the Skiases and the Chris Skias businesses come under that definition?

The answer to this question is found at form M.P. 0093 (07/7) "Special multi-peril liability insurance." Under "persons insured" we find the following definition:

"Each of the following is an insured under this insurance to the extent set forth below:

"(a) if the *named insured* is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor and the spouse of the *named insured* with respect to the conduct of such a business . . . ." (emphasis in original)

The declarations page of the policy names Chris and Shirley Skias t/a Weld-Rite Shop as named insureds. Part 3 of the declarations page designates the named insureds as individuals. The inclusion of the fictitious name "Weld-Rite Shop" in the declarations page does not change the insureds' status as individuals. The record in this case indicates that both the welding and the crane

94

rental businesses were conducted as proprietorships. (Complaint, ¶4.) No legal entity known as the "Weld-Rite Shop" or "Crane Rentals" existed apart from the Skiases. *Waugh v. Steelton Taxicab Co.,* 371 Pa. 436, 89 A.2d 527 (1952); *Jacob's Air Conditioning & Heating v. Associated Heating & Air Conditioning,* 366 Pa. Super. 430, 531 A.2d 494 (1987). See also, *Imperial Cas. & Indem. Co. v. High Concrete Structures Inc.,* 858 F.2d 128 (3d Cir. 1988); *Donald R. Ohrum General Construction v. Bumbarger,* 16 D.&C.4th 203 (1992). Therefore, any liability the Skiases and the Chris Skias businesses would have in the underlying action would be personal liability.

Under the aforesaid policy definition the individuals Chris Skias and Shirley Skias are named insureds "with respect to the conduct of *a* business of which he [sic] is the sole proprietor." Words of common usage in an insurance policy are to be construed in their natural, plain and ordinary sense. *Lititz Mutual Insurance Co. v. Steely,* 746 A.2d 607 (Pa. Super. 1999). The definition contains the indefinite article "a" not the limiting objective "the." Therefore it is reasonable to conclude that *any* business engaged in by the individual insureds as proprietors is insured by the policy. In this case that would include the business of crane rentals. If Boyertown truly wished to limit coverage to the named business of individual insureds it could have easily done so by drafting a restrictive definition of "insured" or by otherwise changing language in the contract of insurance to explicitly limit coverage to a particular business. Boyertown did neither and has presented nothing to the court that would lead us to conclude that the policy covers only welding operations or excludes crane rental hazards. Alternatively, a comparison of the designation

of the named insured on the declarations page, Chris and Shirley Skias t/a Weld-Rite Shop, and the definition of named insured in the policy presents an ambiguity, which is construed against Boyertown and in favor of the insured. *Standard Venetian Blind Co., supra; Warner, supra.*

Boyertown attempts to bolster its argument by referring the court to two forms which are part of the policy. Boyertown maintains that form MP 9991 (07/77) "General schedule-section II SMP liability insurance" lists welding under "hazards and locations" but not crane rentals and therefore this proves Boyertown only intended to insure risks arising out of welding. However, this form sets forth rating classifications; it is neither a description nor an exclusion of covered risks. This conclusion is supported by language on the form, which reads as follows: "The ratings classifications herein, except as specifically provided elsewhere, do not modify any of the provisions of the policy." Boyertown also asserts that coverage is limited by form L6432g (7/83) which lists various descriptions of operations including welding but not crane rentals. Boyertown argues that this form lists the risks and hazards which might be insured upon payment of an appropriate premium, and the omission of crane rentals proves that the policy covered only those risks arising out of welding operations. However, we note that language at the top of this form indicates that the description of operations applies only to explosion, collapse and underground property damage hazards, none of which are involved in the underlying action.

It was for the foregoing reasons, therefore, that we denied Boyertown's motion for summary judgment and granted the Cacereses' motion and ordered Boyertown to provide a defense and indemnification to the Skiases and the Chris Skias businesses in the underlying action.