Carl E. GIBSON et al., Plaintiffs,

v.

The SECRETARY OF U. S. DEPART-MENT OF HOUSING & URBAN DEVELOPMENT, Defendant.

Civ. No. 77–601.

United States District Court, M. D. Pennsylvania.

Aug. 1, 1978.

**4**

Elliot Newman, McCormick, Lynn, Reeder, Nichols & Sarno, Williamsport, Pa., for plaintiffs.

Robert R. Reeder, Cozen, Regier & O'Connor, Philadelphia, Pa., for defendant.

## OPINION

MUIR, District Judge.

The Gibsons filed this action against the General Accident Fire and Life Insurance Corporation and the National Flood Insurers Association in the Court of Common Pleas of Lycoming County on June 9, 1977. The case was removed to this Court pursuant to 28 U.S.C. § 1441(b) and the Secretary of Housing and Urban Development was subsequently substituted as the Defendant. On April 21, 1978, the parties submitted an agreed statement of facts. The Gibsons filed a brief on the case stated on May 8, 1978. The Secretary filed a responsive brief on May 25, 1978. As of the date of this Order, no reply brief has been filed.

The following are the relevant facts as set forth in the agreed statement of facts. The Gibsons own a single family dwelling along Loyalsock Creek in Eldred Township, Lycoming County, Pennsylvania which was covered by a flood insurance policy issued by the National Flood Insurance Association. On September 26, 1975, Loyalsock Creek flooded as defined in the policy, creating a channel around the west side of the house and separating it from the bank of the stream. For approximately one week following the flood the house was on an island. The gut remains in existence and fills with water three to five times a year, subjecting the premises to an increased risk of flood damage. It is physically possible to repair the house at a cost of $10,390.00 but repair is impractical due to the increased risk of flood damage. Following the flood, the first floor of the house was approximately duplicated at a different location and the second floor of the dwelling was moved to that location at a cost of $29,932.03. The replacement cost of the dwelling on September 26, 1975 was $35,180.00. The only area of disagreement is whether the Gibsons are entitled to the cost of re-constructing and relocating their house or whether their recovery under the policy is limited to the cost of repairs.

The Plaintiffs contend that the policy which insures them against all "direct loss by flood" does not require physical damage to the premises caused by the actual touching of flood waters but that any loss proximately resulting from a flood is compensable. Assuming, then, that the loss in this case is covered by the policy, Plaintiffs argue that because of the impracticability of repair, their actual loss is the duplication and removal cost and further that they were obligated under ¶ "G" of the Insurance contract to undertake duplication and removal of the property because that clause required them to make reasonable repairs to protect the property from further damage once a loss has occurred. The Defendant contends that the question of whether the loss occurring in this case is a "direct" loss or a loss proximately caused by the flood need not be reached because the damages claimed by the Plaintiffs are clearly not recoverable under the policy. It is the Secretary's position that the policy covers only physical damage or destruction to the insured property, in this case the single family residence, and that the loss of use of the property or diminution of market value of the property caused by the flood is not recoverable because it is not physical damage to the house itself. In support of this contention, the Secretary cites ¶ C under the heading "Property Not Covered" which states that the policy shall not cover, *inter alia*, land values. Therefore, he contends that even if the loss in this case was directly caused by the September 26, 1975 flood, the Plaintiffs may not recover in excess of the amount which represents the damage to the dwelling house.

◼ Before considering the merits of this case, the Court must determine whether it is obliged to apply federal or state law to the construction of the insurance contract and the question of what damages are recoverable thereunder. The action was originally filed against the General Accident

Fire and Life Assurance Corporation and the National Flood Insurers Association in a Pennsylvania Court of Common Pleas. Because the Defendants were out-of-state parties, the action was removed to this court under 28 U.S.C. § 1441, with jurisdiction being founded on 28 U.S.C. § 1332 granting the district courts original jurisdiction in suits between citizens of different states. Following the removal, however, the Secretary of the United States Department of Housing & Urban Development was substituted as the sole defendant. It is the view of the Court that its jurisdiction now rests on 28 U.S.C. § 1331, the general federal question jurisdictional provision and that it is appropriate to apply federal law. *See Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). However, even if the Court were to apply Pennsylvania law it would reach the same result because there is a dearth of Pennsylvania case law and the Court's discussion of federal common law would apply equally to a determination of what the Pennsylvania Supreme Court might rule if it were faced with the question.

The parties have submitted, and this Court's research has disclosed, little precedent which addresses the exact issue posed by the facts of this case. The Secretary has cited the case of *C. H. Pitt Corp. v. Insurance Co. of North America*, 119 Pitt.L.J. 29 (Pa. Comm. Pleas 1971) involving an insurance policy issued to the owner of a combination hotel, restaurant, and bar business located in the City of Pittsburgh. The policy provided for coverage in the event of damage to real or personal property of the insured and any resulting loss of income. One of the specified perils insured against was riot or civil commotion. From April 6, 1968 through April 11, 1968 a riot occurred in the city in close proximity to the insured's place of business. An emergency curfew was imposed during that period which effectively prevented the insured from conducting his usual business and cost him lost income in the amount of $4,500.00. The Court held that because the policy provided for payment of lost income resulting only from damage to real or personal prop-

erty and because no such damage had occurred in that case, the lost income was not recoverable. The *C. H. Pitt* case is distinguishable from the instant case, however, because commercial premises were involved and provision was made for payment of loss of use of the premises in certain situations. Clearly, loss of use of the premises resulting in lost income is a more substantial concern where a commercially operated, rather than privately owned, premises are involved. Another somewhat analogous case is presented by the facts of *America Southwest Corp. v. Underwriters at Lloyds, London*, 333 F.Supp. 1333 (S.D.Miss.1971). The Plaintiff in that case owned a drilling rig which he used in exploring for deposits of oil and natural gas. He was issued an insurance policy by the defendants providing coverage for direct loss or damage caused by certain specified perils, including accidents occurring during the operation of the rig. The insured property subsequently became damaged by falling pipe and, following a holding that the loss was covered by the policy, the Court held that the plaintiff could recover only the amount of damage done to the rig but not the rental value of the rig for the period during which it was inoperable as a result of the damage because a general insurance policy does not cover loss of use which results from physical damage.

The Defendant in this case concedes that any physical damage caused to the dwelling house covered by the policy is a direct loss to property caused by a flood within the meaning of the contract terms. It is the Secretary's contention, however, that the damages sought by the Gibsons which exceed the cost of repairs are analogous to loss of use of commercial premises or property and that the Secretary is not liable for such additional damage. It is the view of the Court that a fair reading of the insurance policy and an analysis of the nature of the damages suffered in this case do not support the Secretary's position.

The policy issued to the Gibsons in this case insures their dwelling house against direct loss by a flood. The Court

agrees with the Secretary that only the dwelling and its contents, and not the surrounding land, are the subject of the policy. Paragraphs A and B under "Property Covered" on page 1 of the policy, which specify that the property covered is the dwelling and its contents, and the information in the blank on page 2 of the policy labelled "Description and Location of Property Covered" under which has been inserted "One Family Dwelling" and "Household Goods" demonstrate the extent of coverage. However, the Court believes that the Gibsons have suffered the loss of a property right which is connected with their dwelling rather than the land on which it is situated and that such a loss is recoverable under the insurance policy.

In the case of commercial property, whether it be a building used for commercial purposes or an item of construction equipment, it is relatively easy to separate the value of the insured property itself, measured by either a repair or replacement cost, from the amount of income generated by the use of the property. In such a situation, it would seem that the insured is in a position to be aware of the distinction between those two values and to enter into an insurance contract which covers either one or the other or both. Further, it is entirely reasonable to construe an insurance policy on commercial property which provides for recovery only in the event of damage to the property as being limited to repair or replacement cost because the income producing value of such property may be far greater than the actual cost to the property itself. To construe a general policy as covering both property damage and loss of income would be to impose a burden on the insurer to pay for a loss which in all probability was not in his contemplation at the time he entered into the insurance contract.

In contrast, a dwelling house such as the one involved in this case does not possess two clearly distinguishable insurable values. Rather, the Gibsons' interest in their dwelling house is the ability to occupy the house for residential purposes. When, as a result of actual physical damage occurring to the house as a result of the occurrence of one of the insured-against perils accompanied by a change in the geographical structure surrounding the house it becomes impractical to make repairs, the house loses its value as a residence. The Gibsons' actions in procuring a comparable replacement residence in this case is conceded by the parties to be a reasonable course of action under the circumstances. Consequently, the Court concludes that as a result of the September 26, 1975 flood the Gibsons lost one of their property rights which adheres to the dwelling house itself, namely the right to use that house as a residence, and that that right falls within the definition of property covered under the insurance policy. Additionally, the possibility of securing a replacement dwelling was within the contemplation of the parties at the time of contracting because specific provision is made for replacement cost rather than repair on page 3 of the contract. Such cost, rather than being essentially unrelated to the value of the dwelling itself as the income from commercial property may be unrelated to the value of that property, is tied up with the value of the residence itself and falls within the contemplation of the parties.

Given the conclusion that the loss occurring in this case is compensable under the contract of insurance, the Court has no difficulty in concluding that the loss was proximately caused by the September 26, 1975 flood. The Secretary does not contest the Gibsons' contention that the phrase "direct loss by flood" includes all losses which are proximately, rather than remotely, caused by the occurrence of the named peril. There is ample case authority to support the Gibsons' position. *See, e. g., Marshall Produce Co. v. St. Paul Fire & Marine Ins. Co.*, 256 Minn. 404, 98 N.W.2d 280 (1959). Therefore, according to agreed fact No. 21, because the Gibsons' theory of the case has prevailed they are entitled to recover the sum of $29,974.00 under the policy.

An appropriate order will be entered.