

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-7-2004

# Barber v. Unum Life Ins Co

Precedential or Non-Precedential: Precedential

Docket No. 03-4363

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

## Recommended Citation

"Barber v. Unum Life Ins Co" (2004). *2004 Decisions.* Paper 286.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/286

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-4363

JAMES BARBER

v.

UNUM LIFE INSURANCE
COMPANY OF AMERICA,
                        Appellant

On Appeal from the
United States District Court for the
Eastern District of Pennsylvania
D.C. Civil Action No. 03-cv-03018
(Honorable Clarence C. Newcomer)

Argued May 25, 2004

Before: SCIRICA, *Chief Judge*,
  RENDELL and ALARCÓN[*],
    *Circuit Judges*

(Filed September 7, 2004)

---

[*]The Honorable Arthur L. Alarcón,
United States Circuit Judge for the Ninth
Judicial Circuit, sitting by designation.

E. Thomas Henefer, Esquire (Argued)
Stevens & Lee
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania 19603
        Attorney for Appellant

Joseph F. Roda, Esquire (Argued)
Roda & Nast
801 Estelle Drive
Lancaster, Pennsylvania 17601
        Attorney for Appellee

Glen D. Nager, Esquire
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
        Attorney for Amicus Curiae-
        Appellant, Chamber of
        Commerce of the United States

Arnold R. Levinson, Esquire
Pillsbury & Levinson
One Embarcadero Center, Suite 3860
San Francisco, California 94111
        Attorney for Amicus Curiae-
        Appellee, United Policyholders

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

At issue is whether ERISA preempts Pennsylvania's bad faith statute for insurance claims, 42 Pa. C.S. § 8371, through express or conflict preemption. The District Court denied defendant's Fed. R. Civ. P. 12(b)(6) motion moving for dismissal of plaintiff's bad faith claim based on ERISA preemption. *Barber v.*

*UNUM Life Ins. Co. of Am.*, No. 03-3018 (E.D. Pa. filed Sept. 9, 2003). Because we hold 42 Pa. C.S. § 8371 is conflict preempted by ERISA, or alternatively expressly preempted under ERISA § 514(a), we will reverse the judgment of the District Court and remand with instructions to dismiss Barber's bad faith claim.

## I.

**Facts**

This matter involves a dispute over disability benefits provided to plaintiff James Barber by his employer under an employee benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. §§ 1001-1461. Benefits under the plan were insured under a group long-term disability policy Barber's employer obtained from defendant UNUM Life Insurance Company of America.

After Barber became disabled, he applied for and received long-term disability benefits. But UNUM subsequently terminated the benefits after determining Barber was no longer disabled under the policy's terms. Barber brought suit for breach of contract and for bad faith, requesting punitive damages under 42 Pa. C.S. § 8371 for UNUM's alleged bad faith in denying benefits.[1]

---

[1] 42 Pa. C.S. § 8371 provides:
In an action arising under an insurance policy, if the court finds that the insurer has

UNUM moved under Fed. R. Civ. P. 12(b)(6) to dismiss the bad faith claim, citing ERISA preemption. UNUM contends conflict preemption applies because 42 Pa. C.S. § 8371's remedial scheme conflicts with Congress' intent in enacting ERISA's exclusive civil enforcement provision in § 502(a), 29 U.S.C. § 1132(a). § 502(a) allows an ERISA-plan participant to recover benefits, to obtain a declaratory judgment that he is entitled to benefits, and to enjoin an improper refusal to pay benefits. 29 U.S.C. § 1132(a). UNUM contends ERISA preempts 42 Pa. C.S. § 8371 because it is a separate enforcement scheme with a punitive damages provision that adds to the detailed provisions of ERISA's remedial mechanism.

Citing express ERISA preemption, UNUM also contends 42 Pa. C.S. § 8371 falls outside the protective ambit of ERISA's saving clause. ERISA § 514(a),

---

acted in bad faith toward the insured, the court may take all of the following actions:
(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
(2) Award punitive damages against the insurer.
(3) Assess court costs and attorney fees against the insurer.
*Id.*

the express preemption clause, broadly provides that "[e]xcept as provided in subsection (b) of this section, the provisions of this title . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). In apparent tension, however, and reflecting its concern with limiting states' rights to regulate insurance, banking, or securities, Congress drafted a saving clause, ERISA § 514(b)(2)(A), that provides: "Except as provided in subparagraph (B), nothing in this title shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).[2]

Barber responds that 42 Pa. C.S. § 8371, the bad faith statute, "regulates insurance" and accordingly falls within the saving clause's parameters.

## Procedural Background

In *Rosenbaum v. UNUM Life Insurance Co. of America*, No. 01-6758, 2003 U.S. Dist. LEXIS 15652 (E.D. Pa. Sept. 8, 2003) ("*Rosenbaum II*"),[3] the

---

[2]Subparagraph (B) ("the deemer clause") provides:

> Neither an employee benefit plan . . . nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

*Id.* § 1144(b)(2)(B). As summarized by the Supreme Court:

> If a state law "relate[s] to . .

. employee benefit plan[s]," it is pre-empted. § 514(a). The saving clause excepts from the pre-emption clause laws that "regulat[e] insurance." § 514(b)(2)(A). The deemer clause makes clear that a state law that "purport[s] to regulate insurance" cannot deem an employee benefit plan to be an insurance company. § 514(b)(2)(B).

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987).

[3]In *Rosenbaum v. UNUM Life Insurance Co. of America*, No. 01-6758, 2002 U.S. Dist. LEXIS 14155 (E.D. Pa. July 29, 2002) ("*Rosenbaum I*"), the District Court held 42 Pa. C.S. § 8371 is not expressly preempted because it "regulates insurance" under ERISA's saving clause. *Id.* at *1-9. UNUM filed a motion for reconsideration. While that motion was pending, the Supreme Court decided *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003), which clarified a statute "regulates

3

District Court held 42 Pa. C.S. § 8371 satisfied the saving clause and found conflict preemption did not apply. *Id.* at *10-25.[4] The order in *Rosenbaum II* was certified for interlocutory appeal, but the ruling came after parties had advised the District Court they had settled the matter, eliminating a case or controversy. But the district judge in *Rosenbaum II* was also assigned to this lawsuit. On September 9, 2003, the District Court denied UNUM's motion to dismiss for the reasons provided in *Rosenbaum II*. *Barber v. UNUM Life Ins. Co.*, No. 03-3018 (E.D. Pa. filed Sept. 9, 2003). The District Court certified the issue for interlocutory review. *Id.* We granted the petition for allowance of appeal.[5]

---

insurance" and satisfies the saving clause only if it (1) is "specifically directed toward entities engaged in insurance" and (2) "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Id.* at 341-42.

[4]Several other federal district courts in Pennsylvania held ERISA preempts 42 Pa. C.S. § 8371. *See Hunter v. Fed. Express Corp.*, No. 03-6711, 2004 U.S. Dist. LEXIS 13271 (E.D. Pa. July 15, 2004); *Rieser v. Standard Life Ins. Co.*, No. 03-5040, 2004 U.S. Dist. LEXIS 9378 (E.D. Pa. May 25, 2004); *Waters v. Kemper Ins. Cos.*, No. 03-1803, 2004 U.S. Dist. LEXIS 7379 (W.D. Pa. April 19, 2004); *Tannenbaum v. UNUM Life Ins. Co. of Am.*, No. 03-CV-1410, 2004 U.S. Dist. LEXIS 5664 (E.D. Pa. Feb. 27, 2004); *Dolce v. Hercules Inc. Ins. Plan*, No. 03-CV-1747, 2003 U.S. Dist. LEXIS 23890 (E.D. Pa. Dec. 15, 2003); *Nguyen v. Healthguard of Lancaster, Inc.*, 282 F. Supp. 2d 296 (E.D. Pa. 2003) *reconsideration denied* 03-3106, 2003 U.S. Dist. LEXIS 22043 (E.D. Pa. Oct. 7, 2003); *Leuthner v. Blue Cross & Blue Shield of Northeastern Penn.*, 270 F. Supp. 2d 584 (M.D. Pa. 2003); *Morales-Ceballos v. First UNUM Life Ins. Co. of Am.*, No. 03-CV-925, 2003 U.S. Dist. LEXIS 9801 (E.D. Pa. May 27, 2003); *McGuigan v. Reliance Standard Life Ins. Co.*, 256 F. Supp. 2d 345 (E.D. Pa. 2003); *Emil v. UNUM Life Ins. Co. of Am.*, No. 02-2019, 2003 U.S. Dist. LEXIS 1540 (M.D. Pa. Feb. 4, 2003); *Snook v. Penn State Geisinger Health Plan*, 241 F. Supp. 2d 485 (M.D. Pa. 2003); *Bell v. UNUM Provident Corp.*, 222 F. Supp. 2d 692 (E.D. Pa. 2002); *Kirkhuff v. Lincoln Tech. Inst., Inc.*, 221 F. Supp. 2d 572 (E.D. Pa. 2002); *Sprecher v. Aetna U.S. Healthcare, Inc.*, No. 02-CV-00580, 2002 U.S. Dist. LEXIS 15571 (E.D. Pa. Aug. 19, 2002).

One district court agreed with *Rosenbaum II*, 2003 U.S. Dist. LEXIS 15652, and held ERISA does not preempt 42 Pa. C.S. § 8371. *Stone v. Disability Mgmt. Servs.*, 288 F. Supp. 2d 684 (M.D. Pa. 2003).

[5]We have subject matter jurisdiction under 28 U.S.C. § 1331. We have jurisdiction to hear an interlocutory appeal under 28 U.S.C. § 1292(b).

The issues presented are legal issues over which we exercise plenary review. *Concepcion v. Morton*, 306 F.3d

## II.

### A. Conflict Preemption

Under the doctrine of conflict preemption, a state law may be preempted "to the extent that it actually conflicts with federal law," *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990), that is, where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). UNUM contends conflict preemption applies because 42 Pa. C.S. § 8371 is a separate enforcement scheme that enlarges the remedies otherwise available under the detailed civil enforcement provision of ERISA § 502(a).

Until the Supreme Court's recent decision in *Aetna Health Inc. v. Davila*, 124 S. Ct. 2488 (2004), the debate over ERISA conflict preemption centered on two Supreme Court cases—*Pilot Life*, 481 U.S. 41, and *Rush Prudential*, 536 U.S. 355. In *Pilot Life*, an insurance company terminated an injured employee's disability plan. 481 U.S. at 43-44. The employee

---

1347, 1352 (3d Cir. 2002). Because this is an appeal of a Fed. R. Civ. P. 12(b)(6) motion, we accept all factual allegations in the complaint and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiffs. *Rossman v. Fleet Bank Nat'l Ass'n*, 280 F.3d 384, 387 n.1 (3d Cir. 2002). We may dismiss a claim only if it is certain that no relief could be granted under any set of facts which could be proven. *Id.*

brought a common law tort and contract action asserting improper processing of a benefits claim. *Id.* The Court found the saving clause did not save the bad faith claim because it did not "regulate insurance." *Id.* at 50. But stating it was obliged to consider "the role of the saving clause in ERISA as a whole," the Court noted an "understanding of the saving clause must be informed by the legislative intent concerning [ERISA's] civil enforcement provisions," which, the Court said, were "intended to be exclusive." *Id.* at 51-52. In ruling that punitive damages in a bad faith cause of action constituted an additional remedy, the Court explained:

> [The provisions of ERISA] set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under

5

state law that Congress rejected in ERISA.

*Id.* at 54. The Court stated the "'six carefully integrated civil enforcement provisions found in § 502(a) of the [ERISA] statute as finally enacted . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Id.* (quoting *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)) (emphasis in original). Accordingly, the Court found the state claims permitting punitive damages were preempted by ERISA. *Id.* at 57.

The Supreme Court revisited conflict preemption in *Rush Prudential*, 536 U.S. 355, narrowly reaffirming the applicability of conflict preemption in the ERISA context. The Court "recognized a limited exception from the savings clause for alternative causes of action and alternative remedies," describing this exception as "*Pilot Life*'s categorical preemption." *Id.* at 380-81. The Court noted:

> Although we have yet to encounter a forced choice between the congressional policies of exclusively federal remedies and the reservation of the business of insurance to the States, we have anticipated such a conflict, with the state insurance regulation losing out if it allows plan participants "to obtain

remedies . . . that Congress rejected in ERISA."

*Id.* at 378 (quoting *Pilot Life*, 481 U.S. at 54) (citation and internal quotations omitted). The Court explained the civil remedies provided in ERISA § 502(a) are an "'interlocking, interrelated, and interdependent remedial scheme,'" *id.* at 376 (quoting *Mass. Mutual*, 473 U.S. at 146), that "'represent[s] a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans.'" *Id.* at 376 (quoting *Pilot Life*, 481 U.S. at 54). ERISA § 502(a)'s civil enforcement provisions are the "sort of overpowering federal policy" that is so strong it even "overrides a statutory provision designed to save state law from being preempted." *Id.* at 375.[6]

_____

[6]In addition to *Pilot Life* and *Rush Prudential*, the Supreme Court has asserted on other occasions Congress did not intend to authorize remedies other than those provided under ERISA § 502(a), emphasizing the "overpowering" federal policy in ERISA's exclusive civil enforcement provisions. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64-65 (1987) ("As we have made clear today in *Pilot Life* . . . the policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in

The parties here have focused on whether the Supreme Court treatment of conflict preemption in *Pilot Life* and *Rush Prudential* is dicta, noting *Rosenbaum II* found it to be "dicta" that was "unpersuasive." *Rosenbaum II*, 2003 U.S.

Dist. LEXIS 15652, at *20-21.[7] Whatever the outcome of that debate, it is no longer material because in *Aetna Health*, 124 S. Ct. 2488,[8] the Court confirmed that state

[7]Even if the Supreme Court's discussion of conflict preemption were dicta, we do not view their dicta lightly:

> [W]e should not idly ignore considered statements the Supreme Court makes in dicta. The Supreme Court uses dicta to help control and influence the many issues it cannot decide because of its limited docket. "Appellate courts that dismiss these expressions [in dicta] and strike off on their own increase the disparity among tribunals (for other judges are likely to follow the Supreme Court's marching orders) and frustrate the evenhanded administration of justice by giving litigants an outcome other than the one the Supreme Court would be likely to reach were the case heard there."

*Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 561 (3d Cir. 2003) (quoting *McDonald v. Master Fin., Inc. (In re McDonald)*, 205 F.3d 606, 612-13 (3d Cir. 2000)).

[8]The District Court decided this case before the decision in *Aetna Health*, 124 S.

ERISA."); *Mass. Mutual*, 473 U.S. at 146 (ERISA § 502(a)'s "carefully integrated civil enforcement provisions . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.").

7

laws that supplement ERISA's civil enforcement scheme conflict with Congress' intent to make the ERISA remedy exclusive. *Id.* at 2495.

In *Aetna Health*, the Court held the plaintiffs' claims under the Texas Healthcare Liability Act, which imposed a duty of ordinary care in the handling of coverage decisions, were completely preempted by ERISA and therefore removable to federal court. *Id.* at 2492-93, 2498. Noting that ERISA's "integrated enforcement mechanism, ERISA § 502(a)," is "essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans," the Court held "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 2495 (citing *Pilot Life*, 481 U.S. at 54-56). The Court explained "Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim." *Id.* at 2499-2500. In short, *Aetna Health* confirms that conflict preemption applies to any "state cause of action that provides an alternative remedy to those provided by the ERISA civil enforcement mechanism" because such a cause of action "conflicts with Congress' clear intent to make the ERISA mechanism exclusive." *Id.* at 2498 n.4.

Reading *Pilot Life*, *Rush Prudential*, and *Aetna Health* together, a state statute is preempted by ERISA if it provides "a form of ultimate relief in a judicial forum that added to the judicial remedies provided by ERISA," *Rush Prudential*, 536 U.S. at 379, or stated another way, if it "duplicates, supplements, or supplants the ERISA civil enforcement remedy." *Aetna Health*, 124 S. Ct. at 2495 (citing *Pilot Life*, 481 U.S. at 54-56). 42 Pa. C.S. § 8371 is such a statute because it is a state remedy that allows an ERISA-plan participant to recover punitive damages for bad faith conduct by insurers, supplementing the scope of relief granted by ERISA. Accordingly, 42 Pa. C.S. § 8371 is subject to conflict preemption.

---

Ct. 2488. Because *Aetna Health* was issued after oral argument, we requested briefing from the parties.

## B. Express Preemption and the Saving Clause

### 1. The Saving Clause's Effect on Conflict Preemption

Barber contends 42 Pa. C.S. § 8371 is a law that "regulates insurance," and therefore, under ERISA § 514(b)(2)(A), his bad faith claim is saved from preemption, including conflict preemption. He notes Congress could have qualified § 514(b)(2)(A)'s saving clause by limiting its applicability if state law remedies conflict with or add to ERISA's remedies, but it did not do so.

In *Aetna Health*, 124 S. Ct. 2488, the Supreme Court found a similar argument "unavailing," holding that the presence of ERISA's saving clause does not disrupt the normal conflict preemption analysis:

> ERISA § 514(b)(2)(A) must be interpreted in light of the congressional intent to create an exclusive federal remedy in ERISA § 502(a). Under ordinary principles of conflict pre-emption, then, even a state law that can arguably be characterized as 'regulating insurance' will be pre-empted if it provides a separate vehicle to assert a

claim for benefits outside of, or in addition to, ERISA's remedial scheme.

*Id.* at 2500.[9] Citing *Pilot Life*, 481 U.S. 41, the Court noted Congress' policy choices reflected in ERISA's exclusive remedial provision would be undermined by state laws allowing alternate remedies, and concluded that "*Pilot Life*'s reasoning applies here with full force." *Aetna Health*, 124 S. Ct. at 2500. For those reasons, even if 42 Pa. C.S. § 8371 were found to "regulate insurance" under the saving clause, it would still be preempted because the punitive damages remedy supplements ERISA's exclusive remedial scheme.

### 2. Express Preemption

In the alternative, we believe the District Court erred in finding 42 Pa. C.S. § 8371 "regulates insurance" under the saving clause. Accordingly, express preemption under ERISA § 514(a) would apply. As stated, in *Miller*, 538 U.S. 329, the Supreme Court set forth a two-part test

---

[9]Amicus supporting Barber's position contend that because 42 Pa. C.S. § 8371 does not "provide[] a separate vehicle to assert a claim for *benefits*," *Aetna Health*, 124 S. Ct. at 2500 (emphasis added), Barber's claim for punitive damages, as opposed to additional benefits, is not preempted. But this is too narrow a reading given the Supreme Court's emphasis on the "congressional intent to create an exclusive federal *remedy* in ERISA § 502(a)." *Id.* (emphasis added).

which clarified that a statute "regulates insurance" and satisfies the saving clause only if it (1) is "specifically directed toward entities engaged in insurance" and (2) "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Id.* at 341-42.[10]

---

[10]Prior to *Miller*, the seminal case interpreting ERISA's insurance regulation preemption exception was *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724 (1985). In *Metropolitan Life*, the Supreme Court applied the McCarran-Ferguson test to determine whether a law regulates insurance for purposes of the ERISA saving clause. First, the law must have regulated insurance from a "common sense" view. *Id.* at 740. Second, the Court adopted the three factors used in the McCarran-Ferguson Act to determine whether a regulation falls within the business of insurance, that is, whether the regulation (1) transferred or spread policy risk; (2) was an integral part of the policy relationship between the insurer and the insured; and (3) applied only to entities within the insurance industry. *Id.* at 743.

Applying the McCarran-Ferguson factors, the Supreme Court has saved from preemption: an Illinois law requiring HMOs to provide independent review of whether services are medically necessary, *Rush Prudential*, 536 U.S. at 374-75; a California law requiring an insurer to demonstrate prejudice in order to deny an untimely claim for benefits, *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 367-79 (1999); and a Massachusetts law

For the first prong of the test—whether 42 Pa. C.S. § 8371 is "specifically directed towards entities engaged in insurance," 538 U.S. at 342—the inquiry must be answered in the affirmative. 42 Pa. C.S. § 8371 is entitled "actions on insurance policies," and its first sentence limits the provision's scope to insurers: "In an action arising under an insurance policy, if the court finds that the *insurer* has acted in bad faith toward the insured . . . ." *Id.* (emphasis added). Moreover, the remedies offered under 42 Pa. C.S. § 8371 are awarded or assessed "against the insurer." *Id.*

UNUM responds that 42 Pa. C.S. § 8371 fails this prong because it regulates the insurer's conduct rather than the underlying insurance by creating extra-contractual remedies for certain types of insurer conduct. We believe *Miller* forecloses this argument. In *Miller*, the Supreme Court considered Kentucky's Any Willing Provider Law which regulated insurers' conduct with regard to third-party providers. 538 U.S. at 337-38. The Court explained ERISA's savings clause "is not concerned . . . with how to characterize *conduct* undertaken by private actors, but with how to characterize *state*

---

requiring coverage of certain minimum mental health services under any health insurance policy issued in that state, *Metropolitan Life*, 471 U.S. at 742-47. In *Miller*, 538 U.S. 329, the Supreme Court jettisoned *Metropolitan Life*'s test, stating it was making "a clean break from the McCarran-Ferguson factors." *Id.* at 341.

laws in regard to what they 'regulate.'" *Id.* The Court provided the following analogy:

> Suppose a state law required all licensed attorneys to participate in 10 hours of continuing legal education (CLE) each year. This statute "regulates" the practice of law—even though sitting through 10 hours of CLE classes does not constitute the practice of law—because the state has conditioned the right to practice law on certain requirements, which substantially affect the product delivered by lawyers to their clients.

*Id.* at 337-38. The Court concluded the Any Willing Provider Law similarly "'regulates' insurance by imposing conditions on the right to engage in the business of insurance." *Id.* at 338. This case presents a similar situation in which Pennsylvania's bad faith statute regulates insurers' conduct by imposing industry-wide conditions on the insurance business. Accordingly, the first prong of the *Miller* test is satisfied.

Under the second prong, however, 42 Pa. C.S. § 8371 does not "substantially affect[] the risk pooling arrangement between the insurer and insured." *Miller*, 538 U.S. at 342.[11] In *Miller*, the Court

explained the "any willing provider" statute under review, the "mandated-benefit" law in *Metropolitan Life*, 471 U.S. 724, the "notice-prejudice" rule in *UNUM Life*, 526 U.S. 358, and the "independent review" provision in *Rush Prudential*, 536 U.S. 355, "alter the scope of permissible bargains between insurers and insureds" and therefore "substantially affect[] the type of risk pooling arrangements that insurers may offer." 538 U.S. at 338-39. In comparison, the bad faith statute here is remedial in nature—it is a remedy to which the insured may turn when injured by the bad faith of an insurer. *See Kidneigh v. UNUM Life Ins. Co. of Am.*, 345 F.3d 1182, 1187 (10th Cir. 2003) ("[B]ad faith claims, whether common law or statutory, merely provide an additional remedy for policyholders."). 42 Pa. C.S. § 8371 does not affect the kinds of bargains

---

[11]Barber attempts to cast the saving clause in a broad light by claiming *Miller*'s reference to "the risk pooling" arrangement between insurer and insured refers simply to the "insurance" arrangement between them. But the *Miller* test is intended to clarify ERISA's opaque statutory language which saves statutes that "regulate insurance." 29 U.S.C. § 144(b)(2)(A). The *Miller* test, we believe, demands more than whether a law substantially affects the *insurance* arrangement between the insurer and insured. The Supreme Court's precise formulation is whether a statute "substantially affects the *risk pooling* arrangement between the insurer and insured." *Miller*, 538 U.S. at 342 (emphasis added).

11

insurers and insureds may make. It provides that whatever the bargain struck, if the insurer acts in bad faith, the insured may recover punitive damages. *Pilot Life*, 481 U.S. at 49-51 (holding "the common law of bad faith does not define the terms of the relationship between the insurer and the insured; it declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages.").[12]

Moreover, claims for bad faith insurance breaches bear no relation to the risk pooled—the risk of loss the insurer agrees to bear on behalf of the insured. Within the insurance industry, "risk" means the risk of occurrence of injury or loss for which the insurer contractually agrees to compensate the insured. With risk pooling, "a number of risks are accepted, some of which involve losses," and the "losses are spread over all the risks so as to enable the insurer to accept each risk at a slight fraction of the possible liability upon it." *Union Labor Life Ins.*

Co. *v. Pireno*, 458 U.S. 119, 128 n.7 (1982) (internal quotations omitted); *Hollaway v. UNUM Life Ins. Co. of Am.*, 89 P.3d 1022, 1029 (Okla. 2003) (explaining that risk pooling groups "those with greater and lesser risks together to better account and minimize the unpredictable risk for everyone" and "results in spreading the costs of risk of loss for which an insurer must pay across the span of insureds"). Here, the risk pooled, in this case the risk of disability, is reflected in the policy itself. The tort of bad faith breach of an insurance contract is not ordinarily a risk identified in the insurance policy as a risk of loss the insurer agrees to bear for its insured.

Our conclusion is buttressed by *Pireno*, 458 U.S. 119.[13] In *Pireno*, a plaintiff brought suit, alleging antitrust violations by a peer review committee used to assess whether chiropractors' fees were reasonable. *Id.* at 122-24. The Court found the use of the peer review played no part in the spreading and underwriting of insurance risk:

> [Plaintiff's] argument contains the unspoken premise that the transfer of risk from an insured to his insurer actually takes place not when the contract between those parties is completed, but rather only

---

[12]We recognize *Pilot Life* was decided under the pre-*Miller* McCarran-Ferguson standard which asked whether the law at issue "has the effect of transferring or spreading a policyholder's risk." 481 U.S. at 48 (internal quotations omitted). Though the *Miller* Court made a "clean break" from the McCarran-Ferguson factors, 538 U.S. at 341, we believe the Court's analysis in *Pilot Life* is nonetheless instructive and still valid on this point.

---

[13]As with *Pilot Life*, we find the Court's analysis of insurance risk in the pre-*Miller* *Pireno* to still offer guidance.

when the insured's claim is settled. This premise is contrary to the fundamental principle of insurance that *the insurance policy defines the scope of risk assumed by the insurer from the insured*.

*Id.* at 131 (emphasis added). Here, the transfer of risk occurred when Barber entered into the insurance contract, not when his claim was settled. The scope of the risk pooled is defined by the policy, not by a claims settlement statute allowing for bad faith remedies.

Moreover, the threat that punitive awards may result in increased costs that could be passed on to the insured is too attenuated to be deemed to "substantially affect" the risk pooling arrangement. Accordingly, under the *Miller* test, Pennsylvania's bad faith statute does not "regulate insurance" within the meaning of ERISA's saving clause and is expressly preempted by ERISA.

### III.

For the foregoing reasons, we will reverse the judgment of the District Court and remand with instructions to dismiss Barber's bad faith claim.