# Pepper Mill Condominium Association v. Hartford Fire Insurance Company

C.P. of Centre County, no. 2003-1368.

*Richard A. Vanderlin,* for plaintiff.
*Andrew S. Granzow,* for defendant Hartford Fire Insurance Co.
*Terry J. Williams,* for defendant Borough of State College.
*J. David Smith,* for defendant City of Williamsport.

KISTLER, *J.,* January 4, 2005—The subject of this opinion and order is defendant's motion for summary judgment. There are three issues which are disputed: Whether defendant, Hartford Fire Insurance Company, is required to pay plaintiff, Pepper Mill Condominium Association, for emergency expenses associated with plaintiff's collapsed parking deck; whether defendant is required to pay for costs associated with plaintiff's construction of a temporary parking lot; and whether defendant acted in bad faith when it denied coverage for the above mentioned claims.

First, it is plaintiff's position that defendant is required to pay for the emergency expenses pursuant to the parties' Special Multi-Flex Policy's Commercial General Liability Coverage form. Plaintiff alleges that after the collapse it was necessary to search for potentially trapped

or injured persons. Plaintiff states that various entities provided emergency assistance and equipment. Additionally, in order to gain access to the wreckage, an adjoining property owner's chainlink fence was removed and the sidewalks damaged.

Plaintiff supports their position by suggesting that defendant is misinterpreting an exclusionary clause in the policy. The clause reads that defendant will not cover property damage to:

"(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration, or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property. . . . "

Plaintiff interprets the exclusion by the plain meaning of the language. Plaintiff argues that the latter portion of the exclusion, "including . . . prevention of injury to a person or damage to another's property," is limited to only "repair, replacement, enhancement, restoration or maintenance" expenses. Plaintiff suggests, for example, that the exclusion would apply to a situation in which loose tile was removed and replaced to prevent them from falling and injuring people.

Plaintiff cites case law to suggest that previous courts have held that emergency response expenses are covered under a general liability policy. In *Leebov v. United States Fidelity and Guaranty Company,* 401 Pa. 477, 165 A.2d 82 (1960), the court held an insurer was obligated to pay for efforts to prevent further damage. The insured stopped a landslide and prevented serious damage while constructing a building. The court reasoned that "it is

folly to argue that if a policy owner . . . makes a reasonable expenditure and prevents a catastrophe, he must do so at his own cost and expense." *Id.* at 481, 165 A.2d at 86.

Second, it is plaintiff's position that defendant is required to pay for the costs incurred in constructing a temporary parking lot to replace the collapsed parking deck.

Plaintiff supports its position by alleging that defendant misinterprets the language in the Property and Commercial General Liability Coverage portions of the policy. The section defendant relies upon is as follows:

"(A) Coverage

"We will pay for direct physical loss of or damage to the following types of covered property caused by or resulting from a covered cause of loss, up to the applicable covered property limits of insurance stated in the declarations. . . . "

Plaintiff contends that the language covers both "physical loss" as well as "damage"; therefore, these terms should be read independently from each other and construed as two distinct types of property loss.

Plaintiff cites previous case law that has defined "direct physical loss" to include losses that are not a literal physical loss, but a loss of a property right. In *Gibson v. Secretary of U.S. Department of Housing and Urban Development,* 479 F. Supp. 3 (M.D. Pa. 1978), the insurance policy provided for "direct loss by flood." The insured's house was not physically destroyed by flooding, but was surrounded by water and was deemed to be uninhabitable. The court held that, although there was no direct loss, the plaintiff was entitled to recover the

insurance proceeds because he had lost the right to occupy his house. The court in *Hetrick v. Valley Mutual Insurance Co.,* 15 D.&C.4th 271 (Cumberland Cty. 1992), held that an oil spill which polluted ground water and made the insured building uninhabitable qualified as a direct loss of the building.

Here, plaintiff contends that the loss of its parking spaces from the collapse was a loss of a property right, analogous with the loss of the use of the house in *Gibson* and *Hetrick.* Plaintiff's lost property right amounted to its right to occupy its parking facilities, and there is no exclusion to such a right in the policy.

Regarding the first two issues, it is defendant's position that the initial policy does not cover the damages plaintiff is seeking. Defendant maintains that the expenses are not "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage.'"

First, defendant contends that plaintiff is misinterpreting the previously mentioned exclusionary clause. Defendant believes that the alleged emergency services do not constitute "direct physical loss of" or "damage to" covered property caused by or resulting from a covered cause of loss, as required by the terms and conditions of the policy.

Second, defendant believes it is not legally obligated to pay for the cost of constructing temporary parking facilities. These expenses do not constitute "direct physical loss of" or "damage to" covered property caused by or resulting from a covered cause of loss pursuant to the policy. Moreover, defendant asserts that it already paid

plaintiff $25,000 in relation to these costs. This amount is the limit of any available coverage for expediting expenses.

With respect to the third issue, plaintiff contends that defendant's failure to pay claims was done in bad faith. Plaintiff alleges that defendant's interpretation of the policy was unreasonable because of the legal precedent that plaintiff provided compared to defendant's lack of legal precedent. See *Waldman v. Pediatric Services of America Inc.,* 1999 U.S. Dist. Lexis 6106 (E.D. Pa. April 30, 1999). Plaintiff also alleges that defendant conducted an unreasonable investigation because defendant failed to contact the emergency providers and promptly determine the facts. See *Williams v. Hartford Casualty Insurance Co.,* 83 F. Supp.2d 567 (E.D. Pa. 2000) (mem.), *aff'd,* 99-CV-01732 (3d Cir. April 4, 2001) (mem.). Finally, plaintiff alleges that defendant's refusal to pay these claims is frivolous because of defendant's failure to cite any supporting legal authority excluding coverage. See *Frog, Switch & Manufacturing Co. Inc. v. Travelers Insurance Co.,* 193 F.3d 742 (Pa. 1999).

Defendant rebuts this contention by alleging that plaintiff has failed to establish by clear and convincing evidence that its conduct constitutes bad faith. Defendant supports its position by citing 42 Pa.C.S. §8371. However, section 8371 has been preempted because it has been found to conflict with the Employee Retirement Income Security Act of 1974. See *McGuigan v. Reliance Standard Life Ins. Co.,* 256 F. Supp.2d 345, 348 (E.D. Pa. 2003); *Barber v. Unum Life Insurance Co. of America,* 383 F.3d 134, 136 (C.A.3 Pa. 2004).

Summary judgment is proper when there are no genuine issues of material fact as to a necessary element of the cause of action or there are defenses that could be established by additional discovery or expert reports. Pa.R.C.P. 1035.2(1). It is the burden of the moving party to show that there are no genuine issues of material fact. *Anderson v. Moore,* 437 Pa. Super. 642, 645, 650 A.2d 1090, 1092 (1994). The court must examine all of the evidence in the light most favorable to the non-moving party, and any doubt must be resolved against the moving party. *Id.* at 645, 650 A.2d at 1092-93. Summary judgment may only be granted where reasonable minds could not differ, *Askew by Askew v. Zeller,* 361 Pa. Super. 35, 42, 521 A.2d 459, 463 (1987), and unless the case is free from doubt. *Anderson,* 437 Pa. Super. at 645, 650 A.2d at 1092-93.

With respect to the interpretation of an insurance contract, the goal of the court is to determine the intent of the parties by way of the instrument's language. *Gene & Harvey Builders v. Pennsylvania Manufacturers' Association Insurance Co.,* 512 Pa. 420, 426, 517 A.2d 910, 913 (1986). Where ambiguities in the instrument's language are found, they must be construed in the light most favorable to the insured. *Ryan Homes Inc. v. The Home Indemnity Co.,* 436 Pa. Super. 342, 346, 647 A.2d 939, 941 (1994). "Courts should read policy provisions to avoid ambiguities, if possible, and not torture language to create them." *Id.,* quoting *Carpenter v. Federal Insurance Co.,* 432 Pa. Super. 111, 118, 637 A.2d 1008, 1012 (1994). However, a contract is not rendered ambiguous simply because the parties do not agree upon the proper construction. *Ryan Homes,* 436 Pa. Super. at 346, 647 A.2d at 941.

In the current case, this court does not believe summary judgment is appropriate with respect to the first issue. Having reviewed the Commercial General Liability Coverage form in the light most favorable to plaintiff, this court finds that plaintiff has sufficiently demonstrated that the emergency expenses incurred are not included in the exclusionary clause. The costs to excavate in search of potential survivors of the wreckage is not mentioned or alluded to in the exclusionary clause. The "prevention of injury" portion relates back to the restorations and repairs portion of the clause. Noting the holding in *Leebov*, it is clear that plaintiff was not attempting to repair, replace, enhance, restore, or maintain its collapsed parking deck to prevent injury; rather, it was attempting to locate possible survivors of the wreckage. As such, there exists a genuine issue of material fact which precludes a granting of summary judgment.

Regarding the second issue, this court believes summary judgment is appropriate. Defendant has shown that there are no genuine issues of material fact as to which party should pay for the cost of building temporary parking spaces. Plaintiff cites *Gibson v. Secretary of U.S. Department of Housing and Urban Development*, 479 F. Supp. 3 (M.D. Pa. 1978), *supra*, to suggest that the facts in that case are similar to the facts in the current case. In *Gibson*, the plaintiff's house was rendered permanently uninhabitable because flood waters surrounded the house and created an island. From then on, the house was subjected to flooding three to four times a year. Although the house could be repaired, it was deemed impractical to do so because of the high risk of flooding. The court held that the plaintiff was entitled to flood insurance proceeds to build a new house because he suffered a loss of

a property right that was foreseeable at the policy's conception. *Id.* at 6.

Considering the holding in *Gibson,* this court believes that plaintiff's interpretation of the policy is mistaken. The policy agreed to by plaintiff and defendant covers "direct physical loss of or damage to covered property caused by or resulting from a covered cause of loss." Plaintiff believes this language should be interpreted to include the construction of temporary parking. However, this court does not believe constructing temporary parking spaces falls within the categories of either "physical loss of" or "damage to" the parking deck.

Paying for temporary parking in this case would be similar to the insurer in *Gibson* paying for the plaintiff's lodging expenses while the plaintiff built a new house. There is no evidence in either the present case or in *Gibson* to suggest that any of the parties made an agreement as to which party would pay for interim accommodations if the insured's structure were to be lost. Rather, in both cases, the insurer is obligated to pay for only the construction of a new structure to replace the damaged one. Since there is no evidence to the contrary, any loss suffered by plaintiff with respect to the construction of temporary parking spaces is not compensable under the policy. As such, summary judgment is appropriate because defendant has sufficiently shown that there are no genuine issues of material fact regarding which party should pay for the costs of temporary parking.

Regarding the third issue, this court does not find that defendant acted in bad faith when it denied plaintiff pay-

ment. Previous courts have defined "bad faith" on the part of an insurer as a:

"[F]rivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.,* good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." *Terletsky v. Prudential Property & Casualty Insurance Co.,* 437 Pa. Super. 108, 125, 649 A.2d 680, 688 (1994), citing Black's Law Dictionary 139 (6th ed. 1990). The success in bringing a claim for bad faith requires the insured to show by clear and convincing evidence that "the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim." *MGA Insurance Co. v. Bakos,* 699 A.2d 751, 754 (Pa. Super. 1997).

In the current case, this court believes that plaintiff has failed to show by clear and convincing evidence that defendant did not have a reasonable basis for denying its claim. Plaintiff has not displayed that defendant failed to make prudent efforts to investigate the claim. Defendant denied plaintiff's claim because it reasonably believed plaintiff was not entitled to either the emergency expense claim or the claim for payment for construction of extra parking spaces. Additionally, plaintiff has failed to offer proof that defendant unreasonably delayed the handling of the claim. As such, plaintiff's bad faith claim shall be dismissed because there exists no genuine issue of material fact.

## ORDER

And now, January 4, 2005, defendant's motion for summary judgment regarding the emergency expense claim is hereby denied, and this issue will proceed towards trial. Defendant's motion for summary judgment regarding payment for the construction of a temporary parking lot is hereby granted. Defendant's motion for summary judgment regarding plaintiff's bad faith claim is hereby granted.