**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-1525**

TRAVELERS INDEMNITY COMPANY OF AMERICA; THE TRAVELERS
INDEMNITY COMPANY,

  Plaintiffs - Appellees,

COLONY INSURANCE COMPANY; DONEGAL GROUP, INCORPORATED,

  Defendants – Appellees,

  and

FOUNDATIONS UNLIMITED, INCORPORATED; NICHOLAS JOHN ALAN
WHITE,

  Defendants,

  v.

TOWER-DAWSON, LLC,

  Defendant – Appellant.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  William D. Quarles, Jr., District
Judge.  (1:05-cv-02644-WDQ)

Argued: September 24, 2008          Decided: October 31, 2008

Before WILKINSON, Circuit Judge, HAMILTON, Senior Circuit Judge,
and James C. CACHERIS, Senior United States District Judge for
the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Michael Evan Jaffe, THELEN, REID, BROWN, RAYSMAN & STEINER, L.L.P., Washington, D.C., for Appellant. Lee Hedgecock Ogburn, KRAMON & GRAHAM, Baltimore, Maryland, for Appellees. **ON BRIEF:** Todd J. Wagnon, THELEN, REID, BROWN, RAYSMAN & STEINER, L.L.P., Washington, D.C., for Appellant. Stuart M. G. Seraina, KRAMON & GRAHAM, Baltimore, Maryland, for Appellees Travelers Indemnity Company of America and The Travelers Indemnity Company; Laura Campbell Walters, DRECHSLER, LARKIN & WALTERS, P.C., Baltimore, Maryland, for Appellee Colony Insurance Company; Michael B. Mann, MANN & CASEY, P.A., Towson, Maryland, for Appellee Donegal Group, Incorporated.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Tower-Dawson, LLC (Tower), the developer of The Villages at Tower Oaks (Tower Oaks), a residential development in Rockville, Maryland, appeals the district court's grant of summary judgment on its claim that Travelers Indemnity Company of America, Travelers Indemnity Company, Colony Insurance Company, and Donegal Group (collectively the Insureds) had an obligation to indemnify Foundations Unlimited, Inc. (Foundations) for the costs incurred by Tower in installing a new retaining wall in front of the defective one Foundations installed in Tower Oaks and for the costs to repair federally-protected wetlands located adjacent to Tower Oaks which were damaged by Tower during its installation of the new retaining wall. For the reasons that follow, we affirm.

I

The Insureds issued commercial general liability (CGL) policies (the Policies) to Foundations, covering a time period beginning on August 28, 1995 and ending on August 28, 2003. The Policies provided coverage for damages that Foundations owed because of "property damage" caused by an "occurrence." Property damage is defined as either a "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not

physically injured." Occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The Policies' grant of coverage for property damage caused by an occurrence is limited by a "your work" exclusion. Specifically, the your work exclusion provides that coverage to the named insured, in this case Foundations, does not apply to "'property damage' [due] to 'your work' arising out of it or any part of it."

In August 1995, Tower contracted with Foundations to construct a 770-foot retaining wall at Tower Oaks. Construction began shortly thereafter, and Foundations completed the retaining wall some time in 1996.

In 2001, the retaining wall began to show signs of failure, and eventually a seventy-foot section of the retaining wall collapsed in 2003, causing damage to several homeowners' property and federally-protected wetlands adjacent to the development.

In order to prevent further damage to the homeowners' property and the federally-protected wetlands adjacent to the development, Tower stabilized the area around the retaining wall by installing wood and gravel bracing. Once the slope was stabilized, Tower constructed a new retaining wall immediately in front of the defective one. With the two retaining walls in

place, the land both above and below the walls was stabilized. To construct the new retaining wall, Tower decided to access the site through the federally-protected wetlands, but this caused further damage to those wetlands. Following the construction of the new retaining wall, Tower repaired the homeowners' property and remediated the federally-protected wetlands. For the costs it incurred, Tower instituted arbitration proceedings against Foundations, which resulted in an award to Tower in the sum of $2,015,603, an amount which has not been paid.

Travelers Indemnity Company of America and Travelers Indemnity Company (collectively Travelers) instituted this declaratory judgment action, seeking a declaration that it had no duty under the CGL policies it issued to Foundations to indemnify Tower for any portion of the arbitration award Tower obtained against Foundations. Travelers joined as defendants Colony Insurance Company and Donegal Group, each of whom filed counterclaims seeking a declaration that their policies did not require them to indemnify Tower in connection with the arbitration award.

On cross-motions for summary judgment, the district court held that the Insureds were obligated to indemnify Tower for some of its costs, but not others. More specifically, the district court held that the damage to the homeowners' property and the federally-protected wetlands caused by the collapse of

- 5 -

the original retaining wall was a covered loss under the Policies. The district court also held that the cost of the emergency bracing was a covered loss as well, concluding that the cost was incurred to prevent imminent or further damage to third party property. The district court held that the cost of installing the new retaining wall was not a covered loss under the Policies because it was not caused by an occurrence or, alternatively, the loss was barred by the "your work" exclusion. Finally, the district court held that the cost of repairing the further damage to the federally-protected wetlands brought about by the installation of the new retaining wall was not a covered loss because the loss was not accidental.

Tower appeals the portion of the district court's decision adverse to its interests. The Insureds have not challenged any portion of the district court's decision.

II

We review de novo the district court's grant of summary judgment. Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997). We will affirm the district court's decision "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the record and

all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, here Tower. <u>Williams v. Giant Food Inc.</u>, 370 F.3d 423, 428 (4th Cir. 2004).

On appeal, Tower argues that the district court erred when it determined that the cost of installing the new retaining wall and the cost of repairing the damage to the federally-protected wetlands brought about by the installation of the new retaining wall were not covered losses under the Policies. In resolving this argument, we apply Maryland's substantive law regarding the interpretation of an insurance policy, which the parties agree applies to this case. <u>French v. Assurance Co. of Am.</u>, 448 F.3d 693, 700 (4th Cir. 2006). Under Maryland law,

> [a]n insurance policy is interpreted in the same manner as any other contract. Maryland courts do not follow the rule that an insurance policy must be strictly construed against the insurer. The principal rule in the interpretation of contracts is to effect the intentions of the parties. When a contract's wording is clear, the court will presume that the parties intended what they expressed, even if the expression differs from the parties' intentions at the time they created the contract. If reasonably possible, effect must be given to every clause and phrase of a contract, so as not to omit an important part of the agreement.

<u>Nationwide Ins. Co. v. Rhodes</u>, 732 A.2d 388, 390-91 (Md. Ct. Spec. App. 1999) (citations and internal quotation marks omitted).

The Policies provided coverage for damages that Foundations owed because of "property damage" caused by an "occurrence."

The Policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Under Maryland law, in order for there to be an occurrence under a CGL policy, there must be an accident. Lerner Corp. v. Assurance Co. of Am., 707 A.2d 906, 911 (Md. Ct. Spec. App. 1998). Typically, a CGL policy does not define there term accident. French, 448 F.3d at 698. However, under Maryland law, "an act of negligence constitutes an 'accident' under a liability insurance policy when the resulting damage takes place without the insured's actual foresight or expectation." Id.

Our decision in French is instructive on the question of what constitutes an accident under Maryland law. There, a contractor built a single family home for the appellants. Pursuant to the parties' contract, the exterior of the home was clad with a synthetic stucco system known as the Exterior Insulating Finishing System (EIFS). Id. at 696. Nearly five years after the home was completed, the appellants discovered extensive moisture and water damage to the walls of their home, resulting from the defective cladding of the home with the EIFS. Id. The appellants spent over $500,000 to correct the defects in the EIFS exterior of the home and to remedy the resulting damage to the otherwise nondefective structure and walls of the home. Id. The appellants brought an action against the

contractor, and the question before this court was whether the contractor's insurer was required to cover the claim under the contractor's CGL policy. Id.

Applying Maryland law, we concluded that the insurer was required to cover any unexpected property damage that occurred to something other than the defective object as a result of the defective object, but the insurer was not required to cover any damage to the defective object itself:

> [I]f the defect causes unrelated and unexpected property damage to something other than the defective object itself, the resulting damages . . . may be covered. For example, if a collapse of [a] veneer had injured a user of the facility or damaged property other than the veneer itself, these may well be covered.

Id. at 702 (alterations and internal quotation marks omitted).

Thus, when there is no property damage "to otherwise nondefective parts of [a] building," there is no "accident" or "occurrence." Id. at 703. Thus, coverage exists only "to remedy unexpected and unintended property damage to the contractor's otherwise nondefective work-product caused by the . . . defective workmanship." Id. at 706. And if a product does not meet the contract requirements of a sale, it should not be unforeseen that "the purchaser will be entitled to correction of the defect." Id. at 702.

The Maryland Court of Appeals' decision in Woodfin Equities Corp. v. Harford Mutual Insurance Co., 678 A.2d 116 (Md. Ct.

Spec. App. 1996), <u>overruled in part on procedural grounds</u>, 687 A.2d 652 (Md. 1997), also is instructive on the question of what constitutes an accident under Maryland law.[*]  In that case, a hotel hired the insured to install a Heating, Ventilation, and Air Conditioning (HVAC) system.  <u>Id.</u> at 118-19.  The HVAC system was defective, and carpeting and drywall had to be destroyed to remedy the defect.  <u>Id.</u> at 121, 131.  The insured sought coverage for the costs of the carpeting and drywall.  The Maryland Court of Special Appeals found that the insurer was not required to cover the property damage because pulling up carpeting and breaking through drywall to access the HVAC system was not property damage, but rather the "cost incurred in replacing and repairing the HVAC systems."  <u>Id.</u> at 132 n.8.  The <u>Woodfin</u> court further explained: "Voluntarily pulling up carpeting or breaking through dry-wall to access the HVAC units is not property damage. . . .  Even if it could be considered 'property damage,' we would hold that it was not caused by an 'occurrence,' because the so-called damage was not accidental." <u>Id.</u>

Under these authorities, it is evident that the cost of installing the new retaining wall and the cost of repairing the

---

[*] Even though <u>Woodfin</u> was overruled on procedural grounds, Maryland courts continue to find "<u>Woodfin</u> instructive on the interpretation of CGL policies generally."  <u>Lerner Corp.</u>, 707 A.2d at 910.

damage to the federally-protected wetlands brought about by the installation of the new retaining wall are not covered losses under the Policies. With regard to the installation of the new retaining wall, Foundations' contractual obligation to Tower was to furnish a retaining wall, one capable of protecting the land both above and below the retaining wall. The original retaining wall did not fulfill this purpose and needed to be either repaired or replaced. The correction of the defective retaining wall, either by replacing the original retaining wall or installing a new one, simply was not unforeseen, just like it was not unforeseen in French that the EIFS exterior would have to be replaced as it was not capable of keeping moisture and water out of the appellants' home.

With regard to the cost of repairing the damage to the federally-protected wetlands brought about by the installation of the new retaining wall, these costs are not covered losses as well. This damage was not caused by an accident; rather, it was caused by the intentional act of Tower. Just like the carpeting and drywall that had to be removed or destroyed in Woodfin to remedy the defect in the HVAC units, the further damage to the federally-protected wetlands was necessary to correct the defect (inability to protect the land both above and below the retaining wall) in the original retaining wall.

In an attempt to make an end-run around these well-established authorities, Tower states that the outcome of this case is controlled by Aetna Ins. Co. v. Aaron, 685 A.2d 858 (Md. Ct. Spec. App. 1996). In that case, the Maryland Court of Special Appeals addressed whether remediation expenses incurred in connection with the insured homeowner's own property were covered losses under a homeowner's insurance policy covering property damages, even though the policy contained an "owned property" exclusion, which provided that coverage did not apply if the property damage was to "property owned by the insured." Id. at 860. The Aaron court held that the owned property exclusion did not preclude coverage for the costs of preventative measures undertaken on the insured's property to prevent imminent damage to third-party property. Id. at 866-70.

Aaron is of no help to Tower. Aaron did not involve a CGL policy that provided for coverage for damages that were caused by an "occurrence." The inclusion of the occurrence provision brings into play the well-settled Maryland law construing what constitutes an accident in the construction context. If we were to accept Tower's invitation to apply Aaron outside of the homeowner's context and in the construction context, we would turn the Maryland law on what constitutes an occurrence on its head, as redoing the insured contractor's work routinely has the effect of preventing further or imminent damage to third-party

- 12 -

property.  We also note that the Court of Appeals of Maryland has rejected a claim for coverage under a similar CGL policy to the one in our case for measures taken to avoid imminent property damage in the construction context.  See W.M. Schlosser Co., Inc. v. Ins. Co. of North America, 600 A.2d 836, 840 (Md. 1992) ("We conclude that under Maryland law, the liability policy at issue here [which defines occurrence as an accident] did not provide coverage for the preventive costs incurred by Schlosser.").


III

For the reasons stated herein, the judgment of the district court is affirmed.

AFFIRMED